HAROLD FRAUENDORFER, APPELLEE, V.
LINDSAY MANUFACTURING COMPANY, INC., APPELLANT.

639 N.W.2d 125

Filed February 15, 2002.   No. S-01-778.

238

Patrick B. Donahue, of Cassem, Tierney, Adams, Gotch & Douglas, for appellant.

Rolf Edward Shasteen for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

A trial judge of the Workers' Compensation Court found that Harold Frauendorfer suffered a work-related accident on April 17, 1995, while employed with Lindsay Manufacturing Company, Inc. (Lindsay). The trial judge awarded him temporary total disability (TTD) benefits, temporary partial disability (TPD) benefits, and permanent total disability (PTD) benefits. The trial judge also ordered that payments be made beginning from the date of the injury. The Workers' Compensation Court review panel affirmed except for determining that Lindsay was entitled to a credit against a portion of the award, an issue which is not a part of this appeal.

We determine that there was sufficient evidence to support the trial judge's award and that the presumption of correctness afforded to the loss of earning power evaluation from the agreed-upon rehabilitation counselor under Neb. Rev. Stat. § 48-162.01(3) (Supp. 1999) was rebutted. Accordingly, we affirm.

## BACKGROUND

In June 1999, Frauendorfer filed a petition with the Nebraska Workers' Compensation Court, seeking workers' compensation

benefits for medical costs, TTD, TPD, and PTD. Before trial, the parties stipulated to the following facts: (1) Frauendorfer had suffered an injury to his back in an accident arising out of and in the course and scope of his employment with Lindsay on April 17, 1995, (2) all of his medical expenses had been paid, and (3) he reached maximum medical improvement (MMI) on February 3, 1999. The parties also agreed to Karen L. Stricklett and Tori L. Stratman as vocational rehabilitation counselors under § 48-162.01(3). Finally, the exhibits received at trial were stipulated to by the parties. The trial testimony and exhibits showed the following facts:

Frauendorfer had been employed with Lindsay since 1974 and worked as a tube mill operator when he was injured. He had an eighth grade education and, at the time of the accident, was 51 years old and earned an average weekly wage of $499.26. He injured his back while attempting to position an oversized piece of metal on the tube mill. After the accident, he was prescribed a regimen of pain pills, muscle relaxants, and physical therapy, but he continued to work approximately the same amount of hours and at the same rate of pay until September 27, 1995.

On October 5, 1995, Dr. Matthew C. Reckmeyer performed a hemilaminectomy and diskectomy on Frauendorfer's lower back for a herniated disk. Frauendorfer did not work from that date until March 17, 1996. On January 22, 1996, however, Reckmeyer had expressed an opinion that Frauendorfer could return to work in a limited capacity and released him to return for 6 to 8 hours per day, as could be tolerated.

On March 18, 1996, Frauendorfer returned to light-duty work at Lindsay. The parties stipulated that after his return, Frauendorfer worked at a reduced rate of pay, reduced hours, or both. He testified that after his first surgery, he worked only between 4 to 5 hours per day at light duty because that was all he could tolerate. In April, Reckmeyer released Frauendorfer to return to light-duty work, with restrictions for no lifting over 30 pounds occasionally and no squatting, stooping, crawling, or prolonged sitting. In October, a functional capacity evaluation was performed. The physical therapist classified Frauendorfer in the medium-work category but found he was not qualified for all medium-work jobs.

In March 1997, Reckmeyer issued a final report in which he assigned Frauendorfer a 20-percent permanent partial impairment due to his on-the-job injury and surgery. He also noted that he had referred Frauendorfer to Dr. H. Randal Woodward for possible further surgery.

A loss of earning power evaluation was performed in August 1997, in which Stricklett reviewed Frauendorfer's medical history, functional capacity evaluations, and employment and wage histories. Stricklett concluded that Frauendorfer's loss of access to suitable jobs in the Nebraska labor market was 31 percent and that his loss of earning capacity would be 20 percent if he were able to handle overtime hours at Lindsay, 30 percent if he were restricted to an 8-hour shift at Lindsay, and 40 to 50 percent if he were separated from his employment with Lindsay.

Frauendorfer continued to experience pain in his lower back and legs, and he was advised by Woodward to have a second surgery. February 5, 1998, was the last day that Frauendorfer worked at Lindsay. On February 11, Woodward performed an anterior spine fusion. Frauendorfer's pain persisted after the second surgery, however, and Woodward recommended a third surgery because he believed that Frauendorfer's spine was probably not solidly fused at the fusion site. Frauendorfer, however, was unwilling to undergo a third surgery. Woodward then referred him for another functional capacity evaluation. After receiving that report, Woodward agreed with a recommendation of light duty at 8 hours per day, with restrictions of lifting 30 pounds occasionally and 20 pounds more frequently, and assigned a 15-percent permanent partial impairment to his whole body. As noted, the parties stipulated that his MMI was reached on February 3, 1999.

In May 1999, Lindsay offered Frauendorfer employment within the restrictions of the functional capacity evaluation—i.e., a "light duty" job which would allow him to sit or stand as he felt necessary and which did not require heavy lifting—but he did not respond to the offer. He testified that since the second surgery, he was able to work around the house for only 1 to 2 hours before needing to lie down and relieve the pain in his back. He also stated that he took narcotic analgesics continually for pain, which caused him to be drowsy.

In May 1999, Stratman completed a loss of earning capacity analysis for Frauendorfer. Stratman concluded that if Frauendorfer returned to light-duty work at Lindsay, his loss of earning capacity would be approximately 30 percent, and that if he separated from his employment at Lindsay, his loss of earning capacity would be 60 percent.

In June 1999, James T. Rogers also did an earning capacity analysis. He concluded that Frauendorfer did not entirely fit within the "light duty" work classification because he was unable to either sit or stand for extended periods of time and because of his restrictions against bending, crouching, and stooping. Rogers considered him unsuitable for industrial production or assembly work. Considering Frauendorfer's physical limitations, age of 55, limited eighth grade education, and lack of transferable skills, Rogers concluded that Frauendorfer was totally disabled under the odd-lot doctrine.

## TRIAL JUDGE'S FINDINGS

The trial judge awarded Frauendorfer TTD benefits in the amount of $332.84 per week from October 5, 1995—the date of his first surgery—until January 21, 1996, the day before Reckmeyer expressed an opinion that Frauendorfer could return to work in a limited capacity. In addition, the trial judge awarded him TPD benefits in the amount of $99.85 per week for the period from January 22, 1996 to February 10, 1998—the day before his second surgery—an amount that the trial judge stated represented a TPD of 30 percent. This award was based upon the trial judge's finding that the evidence showed Frauendorfer frequently worked less than 8-hour shifts during this period or received a lower wage. The trial judge conceded that there was no medical opinion that Frauendorfer was unable to work 8-hour shifts during this time. He, however, relied upon Stricklett's 1997 report, in which she concluded that Frauendorfer would have a 30-percent loss of earning capacity at Lindsay if he were restricted to 8-hour shifts.

The trial judge awarded Frauendorfer a second period of TTD benefits from February 11, 1998—the day of his second surgery—to February 2, 1999, the day before his MMI. Concerning Frauendorfer's permanent disability, the trial judge acknowledged that Lindsay had offered Frauendorfer

employment with a sit-or-stand option and which required little physical exertion. But the trial judge specifically stated that he believed Frauendorfer's testimony that he needed to lie down to relieve his back pain from either prolonged sitting or standing. Furthermore, the trial judge stated that he found Roger's opinion persuasive. From this evidence, the trial judge awarded Frauendorfer PTD benefits from February 3, 1999, the date of his MMI, and further PTD benefits as long as he remained permanently and totally disabled.

### REVIEW PANEL'S FINDINGS

Lindsay appealed the award to the review panel of the Nebraska Workers' Compensation Court. The review panel concluded that the trial judge had correctly determined that Frauendorfer was entitled to total disability benefits from the date of his injury to the day before his first surgery. The review panel, however, determined that the trial judge had erred in failing to provide credit for the wages Lindsay paid to him during this time. Because the parties had stipulated that Frauendorfer continued to work full time during this period, the review panel concluded that the wages he had earned exceeded Lindsay's obligation to pay indemnity and reversed the award for total disability from April 18 to October 4, 1995. Frauendorfer has not cross-appealed from this portion of the review panel's order.

The review panel concluded that the trial judge (1) correctly calculated Frauendorfer's TPD benefits and (2) correctly awarded Frauendorfer PTD benefits based on Frauendorfer's testimony regarding his limitations and Rogers' opinion regarding Frauendorfer's loss of earning capacity.

### ASSIGNMENTS OF ERROR

Lindsay assigns that the trial judge erred, legally and factually, in awarding Frauendorfer TTD, TPD, and PTD benefits and in failing to consider the presumption of correctness regarding vocational rehabilitation reports authored by Stricklett and Stratman, the specialists agreed upon by the parties. Lindsay assigns that the review panel erred in failing to reverse the trial judge's award of these benefits and in failing to reverse the trial judge's award for the reason that the trial judge did not consider the presumption of correctness of the rehabilitation reports.

## STANDARD OF REVIEW

An appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court did not support the order or award. *Thornton v. Grand Island Contract Carriers*, 262 Neb. 740, 634 N.W.2d 794 (2001). In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court review panel, a higher appellate court reviews the findings of the single judge who conducted the original hearing. *Vonderschmidt v. Sur-Gro*, 262 Neb. 551, 635 N.W.2d 405 (2001).

Upon appellate review, the findings of fact made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Torres v. Aulick Leasing*, 261 Neb. 1016, 628 N.W.2d 212 (2001). If the record contains evidence to substantiate the factual conclusions reached by the trial judge in workers' compensation cases, an appellate court is precluded from substituting its view of the facts for that of the compensation court. *Miller v. E.M.C. Ins. Cos.*, 259 Neb. 433, 610 N.W.2d 398 (2000).

## ANALYSIS

We set forth some principles that help guide our analysis.

We have held that if the nature and effect of a claimant's injury are not plainly apparent, then the claimant must provide expert medical testimony showing a causal connection between the injury and the claimed disability. *Frank v. A & L Insulation*, 256 Neb. 898, 594 N.W.2d 586 (1999). Although an expert witness may be necessary to establish the cause of a claimed injury, the Workers' Compensation Court is not limited to expert testimony to determine the degree of disability but instead may rely on the testimony of the claimant. *Cords v. City of Lincoln*, 249 Neb. 748, 545 N.W.2d 112 (1996); *Luehring v. Tibbs Constr. Co.*, 235 Neb. 883, 457 N.W.2d 815 (1990).

In testing the sufficiency of the evidence to support the findings of fact, the evidence must be considered in the light

most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the successful party will have the benefit of every inference that is reasonably deducible from the evidence. *Hagelstein v. Swift-Eckrich*, 261 Neb. 305, 622 N.W.2d 663 (2001). Moreover, as the trier of fact, the Workers' Compensation Court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Wilson v. Larkins & Sons*, 249 Neb. 396, 543 N.W.2d 735 (1996).

### TEMPORARY TOTAL DISABILITY AFTER FIRST SURGERY

Lindsay contends that there was insufficient evidence in the form of medical opinion to support the trial judge's finding of TTD. The trial judge awarded Frauendorfer TTD benefits from October 5, 1995, the day of his first surgery for a herniated disk, until January 21, 1996, the day he was released to go back to work in a limited capacity.

This court has defined temporary disability as the period during which the employee is submitting to treatment, is convalescing, is suffering from the injury, and is unable to work because of the accident. *Bindrum v. Foote & Davies*, 235 Neb. 903, 457 N.W.2d 828 (1990). "Total disability exists when an injured employee is unable to earn wages in either the same or a similar kind of work he or she was trained or accustomed to perform or in any other kind of work which a person of the employee's mentality and attainments could perform." *Miller v. E.M.C. Ins. Cos.*, 259 Neb. at 440, 610 N.W.2d at 405.

Frauendorfer testified that he had surgery on October 5, 1995, and Stricklett's summary of the medical records in her report confirms this date. The report also states that Reckmeyer concluded that in March 1997, Frauendorfer "had sustained a 20% permanent partial impairment to his body as a whole due to his on-the-job injury and subsequent surgery." An impairment rating is a medical assessment of what physical abilities have been adversely affected or lost by the injury. See, *Phillips v. Industrial Machine*, 257 Neb. 256, 597 N.W.2d 377 (1999) (Gerrard, J., concurring); *Jorn v. Pigs Unlimited, Inc.*, 255 Neb. 876, 587 N.W.2d 558 (1998) (citing Florida case with approval that impairment is medical assessment, while disability is legal

issue); *Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 461 N.W.2d 565 (1990) (drawing distinction between employee's disability and physician's evaluation and assessment of employee's loss of bodily function).

Here, the parties stipulated to the admission of these reports, and that evidence established that Frauendorfer's physical impairment after his surgery was causally related to his on-the-job injury. Stricklett's report also states that Reckmeyer opined that on January 22, 1996, Frauendorfer had " 'reached a point of medical stability in the sense that he could return to limited capacity employment.' " When we view the evidence in the light most favorable to Frauendorfer and give him the benefit of every reasonable inference, the report shows that Reckmeyer did not release Frauendorfer to return to work from his surgery until January 22, 1996. Thus, the trial judge was not clearly wrong in concluding that he was unable to work from October 5, 1995, to January 21, 1996, and awarding him TTD benefits for this period.

### TEMPORARY PARTIAL DISABILITY

Lindsay contends that the trial judge erred in awarding TPD benefits because there was no evidence of specific medical restrictions that Frauendorfer was unable to work 8 hours per day. We disagree. The trial judge awarded TPD benefits at the rate of $99.85 per week from January 22, 1996, the day Reckmeyer released Frauendorfer to return to work in a limited capacity after his first surgery, to February 10, 1998, the day before his second surgery. The amount was based upon a finding of a 30-percent TPD. Although the trial judge stated in his order that there was no medical opinion that Frauendorfer was unable to work 8-hour shifts during this time, he did rely upon Stricklett's 1997 report. In that report, she concluded that as of the report date, Frauendorfer would have a 30-percent loss of earning capacity if he were restricted to an 8-hour shift at Lindsay.

Workers' compensation benefits awarded under Neb. Rev. Stat. § 48-121(2) (Reissue 1998) are not measured by loss of bodily function, but by reduction in earning power or employability. *Variano v. Dial Corp.*, 256 Neb. 318, 589 N.W.2d 845 (1999).

Earning power, as used in § 48-121(2), is not synonymous with wages, but includes eligibility to procure

employment generally, ability to hold a job obtained, and capacity to perform the tasks of the work, as well as the ability of the worker to earn wages in the employment in which he or she is engaged or for which he or she is fitted. *Id.*; *Jorn v. Pigs Unlimited, Inc.*, *supra.*

■ A determination as to whether an injured worker has had a loss of earning power is a question of fact to be determined by the Workers' Compensation Court. *Hagelstein v. Swift-Eckrich,* 261 Neb. 305, 622 N.W.2d 663 (2001).

■ Although medical restrictions or impairment ratings are relevant to a claimant's disability, the trial judge is not limited to expert testimony to determine the degree of disability but instead may rely on the testimony of the claimant. *Cords v. City of Lincoln,* 249 Neb. 748, 545 N.W.2d 112 (1996).

As noted, Reckmeyer assigned Frauendorfer a 20-percent physical impairment after his first surgery resulting from his on-the-job injury and subsequent surgery. Thus, the issue is not whether his injury resulted in an impairment, but what the extent of Frauendorfer's disability was as a result of that impairment from the period when he returned to work after his first surgery until his second surgery.

■ Disability, in contrast to impairment, is an economic inquiry which " ' "can be determined only within the context of the personal, social, or occupational demands, or statutory or regulatory requirements that the individual is unable to meet as a result of the impairment." ' " (Emphasis omitted.) *Phillips v. Industrial Machine,* 257 Neb. 256, 278, 597 N.W.2d 377, 392 (1999) (Gerrard, J., concurring). Stricklett's report indicates that Reckmeyer released Frauendorfer to return to work after his first surgery on a "6-8 hour per day basis 'as tolerated.' " Frauendorfer testified that he worked only between 4 to 5 hours per day at light-duty jobs after his first surgery because that was all that he could tolerate. The parties also stipulated that after he returned to work from his first surgery, Frauendorfer worked "either at a lower rate of pay or at reduced hours or both." When viewed in the light most favorable to Frauendorfer, this evidence demonstrates that Reckmeyer recognized that he might not be able to tolerate 8-hour work shifts, and Frauendorfer's testimony and the parties' stipulation indicates that he could not.

There was also evidence of how Frauendorfer's physical limitations had affected his wage earning capacity in Stricklett's evaluation. Lindsay's occupational health nurse had reported to Stricklett that Frauendorfer had not worked more than 6 hours per day. After reviewing his wage history, Stricklett concluded that Frauendorfer had earned $12.13 per hour—based on a 40-hour workweek—before his injury when his overtime was taken into consideration. Afterward, he earned a maximum of $10.88 per hour for a maximum of 6 work hours per day—a difference in weekly wages of over 30 percent.

Stricklett also found that Frauendorfer had lost access to approximately 31 percent of suitable jobs in the labor market area because of the physical restrictions documented in his functional capacity evaluation. She concluded that he would have a loss of earning capacity of 20 percent if he were able to handle overtime hours at Lindsay, 30 percent if Reckmeyer restricted him to 8-hour shifts at Lindsay, and 40 to 50 percent if he were separated from his employment with Lindsay.

Stricklett's report determined that Frauendorfer's loss of earning capacity would be dependent upon Reckmeyer's final restrictions. But the components of the report—Frauendorfer's impairment rating, functional capacity evaluation, wage losses, and loss of access to the labor market—were based upon his circumstances as they existed after he returned to work from his first surgery. As such, Stricklett's opinion on Frauendorfer's loss of earning capacity was relevant to the determination of the extent of his disability during this time.

Thus, in determining Frauendorfer's loss of earning capacity, the trial judge properly relied on Frauendorfer's testimony and Stricklett's opinion regarding his loss of earning capacity in determining the extent of his disability. See *Cords v. City of Lincoln, supra.* We conclude this evidence was sufficient to support the trial judge's finding of a 30-percent TPD. The trial judge was not clearly wrong in awarding Frauendorfer TPD benefits between his return to work after his first surgery to the day he had his second surgery.

TEMPORARY TOTAL DISABILITY AFTER SECOND SURGERY

The trial judge awarded Frauendorfer a second period of TTD benefits from February 11, 1998, the date of his second surgery

for a spine fusion, to February 2, 1999, the day before the parties stipulated that he reached his MMI. Frauendorfer did not return to work after his second surgery, nor did he seek other employment. Thus, the question is whether the evidence was sufficient to establish that after his second surgery, Frauendorfer was unable to earn wages in either the same or a similar kind of work he was trained or accustomed to perform or in any other kind of work which a person of his mentality and attainments could perform. See *Miller v. E.M.C. Ins. Cos.*, 259 Neb. 433, 610 N.W.2d 398 (2000).

■■■ "An employee's disability as a basis for compensation under § 48-121(1) and (2) is determined by the employee's diminution of employability or impairment of earning power or earning capacity, and is not necessarily determined by a physician's evaluation and assessment of the employee's loss of bodily function." *Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 470, 461 N.W.2d 565, 573 (1990). While physical restrictions and impairment ratings are important when assessing the extent of a claimant's disability, a compensation court is not limited to this evidence and may rely on the claimant's testimony on this issue. See *Luehring v. Tibbs Constr. Co.*, 235 Neb. 883, 457 N.W.2d 815 (1990).

On February 3, 1999, Woodward noted in his report that Frauendorfer was having difficulty sleeping and experiencing pain in the lumbosacral area of his back and his right leg, radiating down to his foot. Woodward recommended a third surgery for posterior exploration fusion and repair of the pseudarthrosis with internal fixation. When Frauendorfer refused a third surgery, he was referred for another functional capacity evaluation.

That evaluation showed that Frauendorfer's safe lifting parameters had decreased from 60 pounds to 35 pounds. The physical therapist concluded that Frauendorfer had a limited tolerance to standing, walking, and static sitting, but could perform work with his upper extremities in the medium physical demand category. He was given an overall physical demand classification of light duty for 8 hours per day, with a recommendation that he be allowed to change his position periodically to decrease pain.

After receiving this evaluation, Woodward assigned Frauendorfer a 15-percent permanent partial impairment rating

to his whole body that was attributed to the injury of April 17, 1995. This evidence established that after his second surgery, Frauendorfer's physical abilities and condition were impaired as a result of his accident at Lindsay.

Furthermore, Frauendorfer testified that since his second surgery, he typically needed to lie down after doing light work around his house for 1 to 2 hours and that when he had tried to do more strenuous work, he had sometimes been incapacitated for up to 2 days. He also testified that he took narcotic analgesics continually for pain, which caused him to be drowsy. As the successful party, he is entitled to the benefit of all favorable inferences from the evidence. Because the trial judge could properly rely upon Frauendorfer's testimony to determine the extent of his disability, the trial judge was not clearly wrong in finding Frauendorfer was unable to work and temporarily totally disabled from the time of his second surgery to the date of his MMI.

### PERMANENT TOTAL DISABILITY

Lindsay contends there was insufficient medical evidence to support the trial judge's award of PTD benefits. The trial judge awarded Frauendorfer PTD benefits from February 3, 1999, the date of his MMI, and further PTD benefits as long as he remained permanently and totally disabled.

Whether a plaintiff in a Nebraska workers' compensation case is totally and permanently disabled is a question of fact. *Schlup v. Auburn Needleworks*, 239 Neb. 854, 479 N.W.2d 440 (1992). Total and permanent disability contemplates the inability of the worker to perform any work which he or she has the experience or capacity to perform. It does not mean a state of absolute helplessness but means disablement of an employee to earn wages in the same kind of work, or work of a similar nature, that he or she was trained for or accustomed to perform, or any other kind of work which a person of his or her mentality and attainments could do. *Id.*

Woodward believed that Frauendorfer should be able to work 8-hour shifts at light duty. Although this evidence is relevant, a trial judge can rely on a claimant's testimony regarding his or her own limitations to determine the extent of the claimant's disability. See *Luehring v. Tibbs Constr. Co.*, 235 Neb. 883, 457

N.W.2d 815 (1990). In *Luehring*, we affirmed the trial judge's award of PTD benefits, despite the doctor's determination of only a 30-percent impairment and without any specific physician's statement that the claimant was unable to work. See *id.*

Lindsay argues that *Luehring* is distinguishable from this case because in *Luehring*, the physician qualified his opinion that Luehring could perform light to moderate duty by stating that " '[Luehring] may not be able to tolerate this due to discomfort, but from an objective standpoint there is no evidence that he would cause any further damage to his low back.' " (Emphasis omitted.) 235 Neb. at 886, 457 N.W.2d at 818. This court did emphasize that statement but did not hold that a claimant's testimony on his or her limitations is incompetent unless supported by the treating physician's statement or equivocation. Disability is not always commensurate with medical restrictions or impairment ratings. See, *Cords v. City of Lincoln*, 249 Neb. 748, 545 N.W.2d 112 (1996) (considering claimant's testimony along with other evidence related to his earning power to affirm award of 10-percent PPD despite physician's 2-percent impairment rating); *Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 461 N.W.2d 565 (1990).

After Woodward assigned Frauendorfer a 15-percent impairment rating, Stratman and Rogers each performed loss of earning capacity reports. Stratman concluded that if Frauendorfer returned to work at Lindsay in the light-duty position Lindsay had offered, his loss of earning capacity would be approximately 30 percent, and that if he separated from his employment at Lindsay, his loss of earning capacity would be 60 percent.

Rogers, on the other hand, concluded that Frauendorfer was totally disabled under the odd-lot doctrine because of his physical limitations, age of 55, limited eighth grade education, and lack of transferable skills. See *Schlup v. Auburn Needleworks*, 239 Neb. at 865, 479 N.W.2d at 448 (" '[u]nder the odd-lot doctrine, which is accepted in virtually every jurisdiction, total disability may be found in the case of workers who, while not altogether incapacitated for work, are so handicapped that they will not be employed regularly in any well-known branch of the labor market' "), quoting 2 Arthur Larson, The Law of Workmen's Compensation § 57.51(a) (1989). Rogers specifically

rejected Stratman's opinion that Frauendorfer could work as a cashier or telephone solicitor because he was not academically qualified. He further found that Stratman's recommendation that he work as a security guard was inconsistent with the available positions for that occupation—all of which required a high school diploma or the ability to stand or walk for an entire shift. The trial judge found Roger's opinion persuasive.

But Lindsay argues that the trial judge should not have accepted Rogers' opinion because he did not take into consideration the employment that Lindsay had offered to Frauendorfer with a sit-or-stand option. Rogers, however, concluded that Frauendorfer did not fit within the light-duty work classification because he was unable to *either* sit or stand for extended periods. Because of Frauendorfer's low tolerance for prolonged sitting, standing, or walking and the physical therapist's recommendation that he never bend, crouch, or stoop, Rogers considered him unsuited for industrial production or assembly work. Thus, Rogers' report indicates that the light-duty job classifications he considered would have encompassed Lindsay's offered employment. The trial judge was not clearly wrong in finding that Frauendorfer was permanently and totally disabled.

### LOSS OF EARNING POWER EVALUATION
### PRESUMPTION OF CORRECTNESS

Lindsay also contends that the trial judge erred by accepting Rogers' opinion without first finding that the presumption of correctness afforded to the loss of earning power evaluations from the two agreed-upon rehabilitation counselors, Stricklett and Stratman, had been rebutted. Under § 48-162.01(3), a loss of earning power evaluation performed by a vocational rehabilitation counselor selected by the parties is entitled to a rebuttable presumption of correctness.

The parties agreed to Stricklett and Stratman as the vocational counselors before trial. Stricklett's report, however, was prepared before Frauendorfer's second surgery and, thus, is not relevant to his loss of earning capacity after that surgery. Stratman opined that Frauendorfer's loss of earning capacity after his second surgery was approximately 30 percent if he returned to light-duty employment at Lindsay and approximately

60 percent if he separated from Lindsay. Here, the trial judge did not specifically state that the presumption of correctness had been rebutted.

A "rebuttable presumption" is generally defined as "[a] presumption that can be overturned upon the showing of sufficient proof." Black's Law Dictionary 1186 (6th ed. 1990). "In all cases not otherwise provided for by statute or by these rules a presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence." Neb. Evid. R. 301, Neb. Rev. Stat. § 27-301 (Reissue 1995). We hold that this rule applies to the rebuttable presumption that an opinion regarding loss of earning capacity expressed by a vocational rehabilitation counselor appointed or selected pursuant to § 48-162.01(3) is correct. *Variano v. Dial Corp.*, 256 Neb. 318, 326, 589 N.W.2d 845, 851 (1999). "[I]t is clear that in determining whether the presumption contained in § 48-162.01(3) has been rebutted, the single judge is required to make factual findings." *Romero v. IBP, inc.*, 9 Neb. App. 927, 932, 623 N.W.2d 332, 336-37 (2001) (holding that because trial judge need not rely on expert testimony in determining extent of claimant's disability, presumption may be rebutted by claimant's testimony as well as testimony of another expert).

Lindsay relies upon *Rodriguez v. Monfort, Inc.*, 10 Neb. App. 1, 623 N.W.2d 714 (2001), *rev'd on other grounds* 262 Neb. 800, 635 N.W.2d 439, to argue that the trial judge's failure to discuss the presumption of correctness is reversible error. In that case, however, no rebuttal opinion was offered and the trial judge referred only to the claimant's testimony and a physical therapist's report in its order. It did not mention the loss of earning power evaluation. The Court of Appeals stated that "[w]e cannot tell if the trial judge ignored the statutory presumption or concluded that it had been rebutted." *Id.* at 8, 623 N.W.2d at 718-19. See, also, *Variano v. Dial Corp., supra* (statutory presumption must be accepted unless rebutted).

In contrast, the trial judge in this case made specific factual findings concerning the presumption. The trial judge stated that he had opinions from both Stratman and Rogers, that he had

reviewed the functional capacity evaluation and other evidence, and, specifically, that he believed Frauendorfer's testimony on his physical limitations. He then stated, "The Court does not believe the plaintiff is employable . . . and finds the opinion of Mr. Rogers persuasive." Section 48-162.01(3) "anticipates the admission of evidence to rebut the presumption of correctness statutorily assigned to any loss of earning capacity report prepared by the court-appointed vocational rehabilitation counselor." *Fay v. Dowding, Dowding*, 261 Neb. 216, 230, 623 N.W.2d 287, 297 (2001). The trial judge's statements in its order are sufficient to determine that it considered the presumption of correctness rebutted.

We conclude that the trial judge did not err by relying on Frauendorfer's testimony that he required the ability to lie down to relieve the back pain he experienced from either prolonged sitting or standing or Rogers' opinion that Frauendorfer was totally disabled under the odd-lot doctrine. When viewed in the light most favorable to Frauendorfer, the evidence is sufficient to support the award of PTD benefits.

## CONCLUSION

We conclude that the evidence was sufficient to support the trial judge's award of TTD, TPD, and PTD benefits and that the trial judge's statements in his order are sufficient to determine that the judge found the presumption of correctness afforded to the loss of earning power evaluation from Stratman, the agreed-upon rehabilitation counselor, was rebutted. We therefore affirm the decision of the review panel.

AFFIRMED.