IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

ALLEN V. MALNOVE HOLDING CO.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

ALBERT ALLEN, APPELLANT,
V.
MALNOVE HOLDING COMPANY, APPELLEE.

Filed June 4, 2013.   No. A-12-953.

Appeal from the Workers' Compensation Court: JAMES R. COE, Judge. Affirmed.

Jon Rehm, of Rehm, Bennett & Moore, P.C., L.L.O., for appellant.

Patrick Mack, of McAnany, Van Cleave & Phillips, P.A., for appellant.

SIEVERS, PIRTLE, and RIEDMANN, Judges.

PIRTLE, Judge.

INTRODUCTION

Albert Allen appeals the decision of the Nebraska Workers' Compensation Court entered September 12, 2012. Allen asserts the Workers' Compensation Court erred in finding that certain expenses were not compensable medical expenses under Neb. Rev. Stat. § 48-120 (Cum. Supp. 2012). For the reasons that follow, we affirm.

BACKGROUND

Allen injured his left knee in the course and scope of his employment with Malnove Holding Company (Malnove) when he fell a short distance from a platform working as a lead pressman on August 10, 2010. Allen was taken to a hospital emergency room with complaints of pain in his left leg. He was diagnosed as having contusions and abrasions, and he was released. Allen visited Dr. Dean Wampler the same day. Wampler noted that the x rays taken at the hospital showed no fracture and that he advised Allen to ice the leg and keep it elevated. Wampler continued to treat Allen, who complained of vague symptoms of pain and parasthesia in the knee and some swelling. Wampler ordered an MRI on Allen's left knee on September 14.

Wampler wrote, "I think for [Allen] to have some confidence to move ahead, I need to do an MRI scan and make sure there is not something missed that we need to address within the knee joint itself."

The MRI showed degenerative changes in the meniscus and an abnormal "signal intensity surrounding the ACL," which was intact. It also showed further degenerative disease in the "patellar articular cartilage." Wampler referred Allen to Excel Physical Therapy, where he completed eight sessions for treatment of his lower left leg. Allen reported he was pleased with his improvement in his range of motion, strength, and endurance.

Wampler referred Allen to an orthopedic specialist, Dr. Steven Goebel, because Allen continued to complain of sharp knee pain. Goebel took Allen off work for approximately 4 weeks because of the continued complaints of pain. Goebel provided care from September 2010 to March 2011, including appointments every 4 to 6 weeks and three deep vein thrombosis (DVT) examinations. The DVT examinations took place on August 17, September 24, and December 29, 2010, and the results were all normal.

On March 17, 2011, Goebel noted that Allen's symptoms were very vague and that it was difficult to isolate exactly where his pain was coming from. He reviewed the MRI results, which demonstrated no appreciable findings. He also noted that there was some degeneration around the meniscus, but that this did not correlate with Allen's reported symptoms. At that time, Goebel recommended a second orthopedic opinion to find the reason for Allen's pain. Dr. D.M. Gammel examined Allen on June 30, and he determined that Allen suffered a contusion and an abrasion to his knee in 2010, which had resolved, and that Allen was not in need of any additional medical treatment.

Allen independently sought treatment from Dr. Donna Nelson while he was under the care of Wampler and Goebel. He first saw her in September 2010, and he returned in December 2011, after being released by Gammel. Nelson performed a fourth DVT examination. The results of this examination were normal, and Nelson suggested that Allen seek a second opinion regarding ongoing pain. She referred him to Dr. Erik Otterberg, who ordered an MRI of the lower extremity, which showed no abnormalities.

Otterberg referred Allen to a neurologist, Dr. Nicole Liebentritt. Liebentritt examined Allen for numbness on the left side of his body and ordered an MRI of the brain and cervical spine to evaluate for any structural abnormalities such as multiple sclerosis. The results of the MRI were suggestive of pituitary adenoma. Liebentritt believed the MRI showed an indication of lesion through the pituitary gland and the possibility of "demyelinating disease" and multiple sclerosis. She referred Allen to Dr. Leslie Hellbusch specifically for an evaluation regarding the potential pituitary tumor identified on the MRI.

This case came before the Workers' Compensation Court on August 8, 2012. The parties stipulated to "venue, jurisdiction, employment, notice, injury, accident and the injury on August 10th, 2010." They also stipulated that all total temporary disability was paid and that Allen's average weekly wage for permanent partial disability was $1,024.36. The parties agreed Allen's left knee injury occurred in the course of his employment.

Allen testified regarding his history of examinations and tests with various doctors. He requested payment for the following: the examination by Nelson, the DVT examination ordered by Nelson, the examination by Otterberg, the purchase of compression stockings, the

examination by Hellbusch, the MRI of the brain and cervical spine, the MRI of the lower extremity ordered by Otterberg, and the examination by Liebentritt.

The trial court found that (1) Allen had a 2½-percent impairment to his left knee entitling him to 5.375 weeks of benefits at $691 per week, (2) Allen was entitled to future medical care, (3) Allen was not entitled to attorney fees under the common fund doctrine, and (4) Malnove should pay certain medical expenses including treatment by Wampler and Goebel, as well as the first three DVT examinations.

The court denied the compensability of treatment provided by Nelson, including the fourth DVT examination. The court also denied the compensability of the consultation with Hellbusch and the MRI of Allen's brain and spine. The court determined these were not compensable medical expenses as they were not reasonable and necessary to treat the injury to Allen's left leg.

## ASSIGNMENT OF ERROR

Allen alleges on appeal that the court erred in finding that certain expenses were not compensable medical expenses under § 48-120.

## STANDARD OF REVIEW

A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment or award; or (4) the findings of fact by the compensation court do not support the order or award. *Sellers v. Reefer Systems*, 283 Neb. 760, 811 N.W.2d 293 (2012).

If the record contains evidence to substantiate the factual conclusions reached by the trial judge in workers' compensation cases, an appellate court is precluded from substituting its view of the facts for that of the compensation court. *Frauendorfer v. Lindsay Mfg. Co.*, 263 Neb. 237, 639 N.W.3d 125 (2002).

## ANALYSIS

An employer is liable only for those reasonable medical expenses incurred as a result of a compensable accident. Expenses not shown by the evidence to have been incurred as a result of a compensable accident are not allowable as charges against the employer. *Hare v. Watts Trucking Service*, 220 Neb. 403, 370 N.W.2d 143 (1985).

The purpose of § 48-120 is to authorize the compensation court to order, as part of a final award, an employer to pay the costs of the medicines and medical treatment reasonably necessary to relieve the worker from the effects of the injury. *Sellers, supra*. In *Sellers*, the Nebraska Supreme Court considered the scope of an award to include all reasonable and necessary medical expenses resulting from compensable injuries. The Supreme Court determined the only limitation on medical benefits under the statute is that the treatment be reasonable and that the compensation court has the authority to determine the necessity, character, and sufficiency of the treatment furnished. *Id.*

It is undisputed that Allen sustained a left knee injury in the course and scope of his employment for Malnove and that the Workers' Compensation Court awarded certain payments as a result. Such payments are not at issue in this appeal.

Allen appeals the denial of certain payments, and the remaining question is whether the court clearly erred in denying payment for these specific treatment expenses.

*Treatment by Nelson.*

The Workers' Compensation Court denied payment for treatment by Nelson, specifically for such treatment occurring on and after December 2, 2011, including consultations and a DVT examination.

Allen visited Nelson for treatment after Goebel and Gammel both determined that Allen was no longer in need of additional medical treatment for his knee. The doctors noted there were no objective findings on the MRI which explained the pain and numbness Allen complained of, and they concluded these symptoms were not a result of the fall. The court's denial of such treatment by Nelson is not erroneous, because Allen was already treated and released for the compensable injury and the additional symptoms did not correlate to the injury sustained in the fall.

The court also denied payment for the DVT examination ordered by Nelson, because it was not reasonable and necessary under the circumstances. There is evidence that three previous DVT examinations performed by Dr. Goebel all returned normal results. We find the court's determination was supported by the evidence.

*MRI of Brain and Cervical Spine.*

As discussed above, the purpose of the statute is to allow an employee to recover the reasonable and necessary medical expenses resulting from compensable injuries. *Sellers v. Reefer Systems*, 283 Neb. 760, 811 N.W.2d 293 (2012).

Here, the Workers' Compensation Court also denied payment for the MRI examination of Allen's brain and cervical spine, finding the expenses were not reasonable and necessary to treat the compensable knee injury.

The work-related injury in this case was a contusion to the left knee. Liebentritt noted Allen complained of paresthesia along his left upper and lower extremities, as well as his trunk, and stated these symptoms were not consistent with a fall where he simply hurt his leg. The record shows Liebentritt's recommendation of an MRI of the brain and cervical spine was to evaluate for any abnormalities such as multiple sclerosis plaques or a cord injury. We find the evidence supports the Workers' Compensation Court's conclusion that these tests were unrelated to or unnecessary for treatment of his compensable leg injury.

## CONCLUSION

Upon our review of the evidence, we do not find the existence of any of the grounds to modify, reverse, or set aside the order of the Workers' Compensation Court. Accordingly, we affirm the findings of the Nebraska Workers' Compensation Court.

AFFIRMED.

- 4 -