IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

WIEDEL V. LUCILE DUERR HAIR STYLING

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

CATHERINE WIEDEL, APPELLANT,

V.

LUCILE DUERR HAIR STYLING, INC., AND ITS WORKERS' COMPENSATION INSURER,
THE PHOENIX INSURANCE COMPANY, APPELLEES.

Filed November 14, 2017.    No. A-17-304.

Appeal from the Workers' Compensation Court: J. JOHN R. HOFFERT, Judge. Affirmed.

Christa Binstock Israel, of Atwood, Holsten, Brown, Deaver & Spier Law Firm, P.C., L.L.O., for appellant.

Dennis R. Riekenberg and Patrick B. Donahue, of Cassem, Tierney, Adams, Gotch & Douglas, for appellees.

PIRTLE, RIEDMANN, and ARTERBURN, Judges.

RIEDMANN, Judge.

INTRODUCTION

Catherine Wiedel appeals the award of the Workers' Compensation Court which concluded, relevant to this appeal, that she sustained a 25-percent loss of earning capacity. Wiedel argues that the compensation court erred in using the incorrect hub community from which to determine her loss of earning capacity, failed to accept the parties' stipulation with respect to her permanent physical restrictions, and erroneously determined that the applicable statutory presumption of correctness had not been overcome. Finding no reversible error, we affirm.

- 1 -

BACKGROUND

Wiedel was an employee of Lucile Duerr Hair Styling, Inc. (Lucile Duerr) when she sustained a work-related injury in April 2009. She filed a petition in the compensation court in July 2014, and trial on the relevant issues was held in August 2016.

Wiedel was born in 1943 and became a licensed cosmetologist in 1962. She spent her entire career working as a hair stylist. At the time of injury, she was working full-time as a hair stylist and occasionally as a receptionist for Lucile Duerr in Lincoln, Nebraska. Following the accident, Wiedel was unable to work until approximately September 2009 at which time she returned for 4 hours per day and gradually increased her time until she regained full-time status. According to Wiedel, she initially had some difficulty physically performing her job duties upon her return to work, but ultimately she was able to return to a full-time schedule earning the same wage and could perform her usual and customary job tasks with minimal difficulties. In July 2013, Wiedel elected to retire from Lucile Duerr and move to Hebron, Nebraska in order to be closer to her family. Between September 2009 and July 2013, there were never days where she was physically unable to perform her job duties at Lucile Duerr.

After moving to Hebron, Wiedel accepted a job as a hair stylist at an assisted living facility working approximately 28 hours per week. Wiedel testified at trial that she is happy working fewer hours and wanted to do so because she wanted to "take it easy." She looked for other jobs in Hebron, but at those jobs, she also planned to work just 28 to 30 hours per week.

The parties stipulated that Wiedel suffered numerous injuries as a result of the April 2009 work accident and sustained the permanent physical restrictions set forth in a March 2010 functional capacity evaluation (FCE) report. According to the FCE report, Wiedel is employable at the sedentary-light physical demand classification on a full-time basis. She is not qualified for up to constant standing or walking but is qualified for up to constant sitting. Kneeling and crawling were not recommended.

The parties agreed to allow vocational counselor, Michelle Holtz, conduct a loss of earning capacity analysis on Wiedel. Holtz authored her initial report in December 2011, when Wiedel was still residing in Lincoln. Holtz noted that Wiedel had returned to full-time employment following the accident and had reported to Holtz that for the most part she was able to perform her usual and customary job duties with minimal difficulties. Wiedel informed Holtz at that time that she planned to continue working for Lucile Duerr, and Holtz found that if Wiedel was capable of maintaining her employment at Lucile Duerr, she would have no loss of wage. Holtz determined that the restrictions set forth in the March 2010 FCE alone would preclude Wiedel from returning to all cosmetology jobs unless an employer was willing to make accommodations, and as a result, Wiedel had lost access to a number of jobs that were previously available to her and some prospective employers may view her as a less competitive job candidate due to her disability and restrictions. Holtz concluded, however, that when considering the restrictions in the FCE and Wiedel's actual capabilities, Wiedel sustained a 25-percent loss of earning capacity based on jobs in the Lincoln labor market.

After Wiedel relocated to Hebron, Holtz was asked for an updated analysis based on the Hebron labor market. Holtz concluded in a report dated September 2014 that her calculation of a 25-percent loss of earning capacity remained unchanged based on the southeastern Nebraska labor

market. In January and April 2016, she reiterated her opinion that as a result of the work-related accident, Wiedel was employable but suffered a 25-percent loss of earning capacity regardless of whether the Lincoln, Nebraska or southeastern Nebraska labor market area was utilized.

Wiedel asked Helen Long to perform a rebuttal loss of earning capacity analysis in May 2016. Long's report noted that as a result of Wiedel's reduced physical ability, she was no longer able to perform her chosen career as it is customarily performed in a competitive workplace. The report also stated that Wiedel has identified a position at a small, rural long-term care facility that allows her the opportunity to practice her profession and to accommodate her occasional frequent standing restriction, and Long concluded that were it not for this unique, one-of-a-kind situation, Wiedel would be unable to utilize her cosmetology skills. Long therefore opined that Wiedel sustained a 100-percent loss of earning power as a result of her April 2009 injury.

In response to Long's opinion, Holtz authored a final report in June 2016. Therein, she observed that Wiedel had returned to work at Lucile Duerr in her usual and customary position after her injury. Holtz recognized that Wiedel was implementing some self-modifications in her work setting, but noted that Wiedel had advised her that she was capable of performing her usual and customary job with minimal difficulties and she had no plans to seek alternate employment. Holtz noted that Wiedel was physically capable of working on a full-time basis in a commercial hair styling environment following her work injury and could have continued to do so had she not elected to retire from her position and relocate to Hebron to be closer to her family. Therefore, Holtz's opinion of a 25-percent loss of earning capacity remained the same.

Following trial, the compensation court issued an award in favor of Wiedel. The award specifically stated that the court had carefully and critically analyzed all of the reports by Holtz and Long and concluded that the statutory presumption of correctness attached to Holtz's opinion had not been overcome. The court observed that the principle points of contention between Holtz and Long concerned Wiedel's capacity to perform the physical duties associated with her occupation as a hair stylist and whether Lincoln or Hebron was the appropriate hub community for loss of earning power purposes.

As to the first issue, the court noted and accepted the parties' stipulation regarding the FCE findings but also found noteworthy Wiedel's admission that she was essentially physically capable of performing the job she held prior to her injury. The court found Wiedel to be very credible and found her testimony highly relevant in assessing her physical capabilities. The court observed that Wiedel testified in her deposition that she was able to perform her usual and customary job tasks with minimal difficulties after she returned to work in September 2009, and that she left her position with Lucile Duerr because she chose to retire. The court also noted that Wiedel advised Holtz that there were no days between September 2009 and July 2013 where she was physically incapable of performing her job tasks, and that she testified in her deposition that she was working part-time in Hebron because she wanted to.

With respect to the appropriate hub community from which to analyze Wiedel's loss of earning capacity, the court recognized that Wiedel's move from Lincoln to Hebron was prompted by her desire to be near relatives and that she chose her position working 28 hours per week because she wanted to work only part-time. Thus, the court rejected Wiedel's suggestion that her loss of earning capacity should to be assessed from the hub community of Hebron. The court reasoned that one of the primary purposes of the Workers' Compensation Act is to restore an

injured worker to gainful employment, and that goal was met when Wiedel returned to Lucile Duerr and worked in her usual position for nearly 4 years before electing to retire. The court ultimately accepted Holtz's opinion and concluded that Wiedel had sustained a 25-percent loss of earning capacity. Wiedel timely appeals to this court.

## ASSIGNMENTS OF ERROR

Wiedel assigns, restated, that the compensation court erred in (1) finding that Lincoln was the appropriate hub community from which to measure her loss of earning capacity, (2) failing to accept and apply the stipulation concerning her causally related permanent physical restrictions, and (3) failing to accept Long's opinion that she had sustained a 100-percent loss of earning capacity.

## STANDARD OF REVIEW

Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2016), an appellate court may only modify, reverse, or set aside a Workers' Compensation Court decision when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Tchikobava v. Albatross Express*, 293 Neb. 223, 876 N.W.2d 610 (2016). Determinations by a trial judge of the Workers' Compensation Court will not be disturbed on appeal unless they are contrary to law or depend on findings of fact which are clearly wrong in light of the evidence. *Id*. Factual determinations by a workers' compensation trial judge have the effect of a jury verdict and will not be disturbed unless they are clearly wrong. *Gardner v. International Paper Destruction & Recycling*, 291 Neb. 415, 865 N.W.2d 371 (2015). In testing the sufficiency of the evidence to support the findings of fact by the workers' compensation court, every controverted fact must be considered in the light most favorable to the successful party and that party must be given the benefit of every inference reasonably deducible from the evidence. *Id*.

## ANALYSIS

Although Wiedel assigns three errors, the issues can be consolidated into the single question of whether the compensation court erred in accepting Holtz's opinion as to Wiedel's loss of earning capacity over Long's opinion. We conclude that the court's factual finding was not clearly wrong.

A determination as to whether an injured worker has had a loss of earning power is a question of fact to be determined by the Workers' Compensation Court. *Frauendorfer v. Lindsay Mfg. Co.*, 263 Neb. 237, 639 N.W.2d 125 (2002). Earning power, as used in Neb. Rev. Stat. § 48-121(2) (Reissue 2010), is not synonymous with wages, but includes eligibility to procure employment generally, ability to hold a job obtained, and capacity to perform the tasks of the work, as well as the ability of the worker to earn wages in the employment in which he or she is engaged or for which he or she is fitted. *Frauendorfer v. Lindsay Mfg. Co., supra*. In determining the degree of an employee's loss of earning power, disability is not always commensurate with medical restrictions or impairment ratings. *Id*. Accordingly, although medical restrictions or impairment ratings are relevant to a claimant's disability, the trial judge is not limited to expert testimony to

determine the degree of disability but instead may rely on the testimony of the claimant. *Id.* Thus, in the instant case, the compensation court's reliance on Wiedel's subjective testimony regarding her own abilities in combination with the FCE restrictions was not erroneous.

In addition, the opinion of an agreed-upon vocational counselor carries a rebuttable presumption of correctness under Neb. Rev. Stat. § 48-162.01(3) (Reissue 2010). A party who disagrees with that opinion has the burden to show that it is inaccurate. *Giboo v. Certified Transmission Rebuilders*, 275 Neb. 369, 746 N.W.2d 362 (2008). The presumption may be overcome if the opponent establishes by an opposing expert's testimony or otherwise that the expert's opinion was based upon unreliable factual assumptions, or by a showing that his or her assessment was predicated on principles contrary to law. *Id.*

In the present case, as the agreed-upon vocational counselor, Holtz's opinion was entitled to a rebuttable presumption of correctness. The compensation court recognized and accepted the results of the FCE to which the parties had stipulated. But it also relied upon Wiedel's own assertions that she was able to perform her job tasks as a hair stylist with minimal difficulties, that there were no days after her return to Lucile Duerr where she was physically incapable of performing her job tasks, and that she ultimately left her position because she elected to retire and move closer to her family. Moreover, the court noted that Wiedel asserted that she worked part-time in Hebron because she wanted to work part-time, not because her injuries made her physically unable to work longer hours. Holtz considered these same factors when reaching her opinion as to Wiedel's loss of earning power, whereas Long relied solely on the FCE restrictions and failed to account for Wiedel's actual physical capabilities. Thus, the court determined that Holtz's opinion was more credible and the presumption of correctness remained intact.

The Workers' Compensation Court is entitled to accept the opinion of one expert over another. *Contreras v. T.O. Haas, LLC*, 22 Neb. App. 276, 852 N.W.2d 339 (2014). As the trier of fact, the Workers' Compensation Court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Id.* We cannot find that the compensation court's acceptance of Holtz's opinion over Long's opinion was clearly wrong.

Wiedel also asserts that the compensation court erroneously determined that Lincoln was the appropriate hub community from which to ascertain her loss of earning capacity, rather than Hebron. Generally, when an employee injured in one community relocates to a new community, the new community will serve as the hub community from which to assess the claimant's earning capacity, provided that the change of community was done in good faith, and not for improper motives. See *Giboo v. Certified Transmission Rebuilders*, 275 Neb. 369, 746 N.W.2d 362 (2008).

The workers' compensation court determined that this issue was one "of academic interest only" due to Wiedel's testimony that she was able to return to her prior employment doing her usual and customary job with minimal difficulty for over 4 years and then chose to retire from her employment and relocate to Hebron. Once in Hebron, she chose to work part-time and was able to locate appropriate work doing so. The Nebraska Supreme Court has held that courts must "assess an employee's actual earning capacity." *Giboo v. Certified Transmission Rebuilders, supra.* Given the facts of this case, we cannot say that the court was clearly wrong in adopting Holtz's opinion that Wiedel suffered a 25-percent loss of earning capacity regardless of the hub community chosen.

## CONCLUSION

The compensation court did not err in concluding that the statutory presumption of correctness remained intact and in relying on Wiedel's testimony in its determination of her loss of earning capacity. We therefore affirm.

AFFIRMED.