Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/01/2016 09:05 AM CDT

Andrei Tchikobava, appellant, v.
Albatross Express, LLC, appellee.
___ N.W.2d ___

Filed April 1, 2016.    No. S-15-411.

1. **Workers' Compensation: Appeal and Error.** Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2014), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.

2. ____: ____. Determinations by a trial judge of the Workers' Compensation Court will not be disturbed on appeal unless they are contrary to law or depend on findings of fact which are clearly wrong in light of the evidence.

3. **Workers' Compensation: Evidence: Appeal and Error.** Admission of evidence is within the discretion of the Workers' Compensation Court, whose determination in this regard will not be reversed upon appeal absent an abuse of discretion.

4. **Workers' Compensation.** Whether a plaintiff in a Nebraska workers' compensation case is totally disabled is a question of fact.

5. **Workers' Compensation: Evidence: Appeal and Error.** In testing the sufficiency of the evidence to support the findings of fact in a workers' compensation case, every controverted fact must be resolved in favor of the successful party and the successful party will have the benefit of every inference that is reasonably deducible from the evidence.

6. **Workers' Compensation: Rules of Evidence: Due Process.** As a general rule, the Nebraska Workers' Compensation Court is not bound by the usual common-law or statutory rules of evidence, but its discretion to admit evidence is subject to the limits on constitutional due process.

7. **Trial: Evidence: Appeal and Error.** In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party.

8. \_\_\_\_: \_\_\_\_: \_\_\_\_. The exclusion of evidence is ordinarily not prejudicial where substantially similar evidence is admitted without objection.

9. \_\_\_\_: \_\_\_\_: \_\_\_\_. Where evidence is cumulative to other evidence received by the court, its exclusion will not be considered prejudicial error.

10. **Workers' Compensation: Stipulations: Evidence.** Before an order for future medical benefits may be entered, there should be a stipulation of the parties or evidence in the record to support a determination that future medical treatment will be reasonably necessary to relieve the injured worker from the effects of the work-related injury or occupational disease.

11. **Workers' Compensation: Evidence.** An award of future medical expenses requires explicit evidence that future medical treatment is reasonably necessary to relieve the injured worker from the effects of the work-related injury.

12. **Workers' Compensation: Words and Phrases.** Temporary disability is the period during which the employee is submitting to treatment, is convalescing, is suffering from the injury, and is unable to work because of the accident.

13. **Workers' Compensation.** Total disability exists when an injured employee is unable to earn wages in either the same or a similar kind of work he or she was trained or accustomed to perform or in any other kind of work which a person of the employee's mentality and attainments could perform.

14. \_\_\_\_. As the trier of fact, the Workers' Compensation Court is the sole judge of the credibility of witnesses and the weight to be given their testimony.

15. **Workers' Compensation: Expert Witnesses.** If the nature and effect of a claimant's injury are not plainly apparent, then the claimant must provide expert medical testimony showing a causal connection between the injury and the claimed disability.

16. \_\_\_\_: \_\_\_\_. Although an expert witness may be necessary to establish the cause of a claimed injury, the Workers' Compensation Court is not limited to expert testimony to determine the degree of disability but instead may rely on the testimony of the claimant.

17. \_\_\_\_: \_\_\_\_. Although medical restrictions or impairment ratings are relevant to a claimant's disability, the trial judge is not limited to expert testimony to determine the degree of disability but instead may rely on the testimony of the claimant.

Appeal from the Workers' Compensation Court: Daniel R. Fridrich, Judge. Affirmed in part, and in part reversed and remanded with directions.

James C. Bocott, of Law Office of James C. Bocott, P.C., L.L.O., for appellant.

Patrick B. Donahue and Dennis R. Riekenberg, of Cassem, Tierney, Adams, Gotch & Douglas, for appellee.

Heavican, C.J., Wright, Connolly, Miller-Lerman, Cassel, and Stacy, JJ.

Miller-Lerman, J.

## NATURE OF CASE

On November 12, 2013, Andrei Tchikobava filed a petition in the Nebraska Workers' Compensation Court seeking temporary and permanent disability benefits for injuries he sustained in an accident that occurred on August 9, 2010, that arose out of and in the course and scope of his employment as a truckdriver with Albatross Express, LLC. A hearing was held in February 2015, and on April 1, 2015, the compensation court awarded Tchikobava (1) temporary total disability benefits for the period from August 10, 2010, to and including December 8, 2010, and (2) permanent total disability benefits starting May 2, 2014, and continuing for so long as Tchikobava remains permanently and totally disabled. The compensation court did not award temporary total disability benefits for the period of December 9, 2010, through May 1, 2014, and it found that Tchikobava was not entitled to future medical care expenses or penalties, attorney fees, or interest. Tchikobava appeals.

We determine that there was no reversible error in the compensation court's evidentiary ruling excluding the deposition of Dr. Leon Reyfman and that the compensation court did not err when it did not award future medical expenses. These rulings are affirmed. However, we reverse the denial

of temporary total disability benefits for the period from December 9, 2010, through May 1, 2014, and remand this cause to the compensation court to again rule on this issue based on the existing record and to provide an explanation which forms the basis for its ruling.

## STATEMENT OF FACTS

The parties in this case do not dispute that Tchikobava was employed by Albatross Express as a truckdriver and that on August 9, 2010, Tchikobava sustained injuries in an accident arising out of and in the course and scope of his employment. On that day, Tchikobava and his team driver were driving a semi-trailer truck from New Jersey to California. They had stopped in Chicago, where the team driver began driving and Tchikobava entered the sleeper berth and fell asleep. While in Nebraska, Tchikobava was sleeping and his team driver was driving, when their semi-trailer truck was struck from behind by another semi-trailer truck. The force of the impact caused Tchikobava to be thrown from the sleeping area of the semi-trailer truck into the front of the driving compartment.

Tchikobava was transported to a hospital in Seward, Nebraska. Once he was at the hospital, Tchikobava complained of chest pain in the left rib area. He testified at the hearing that he had pain in his back, his ribs, and the area around his heart and stomach. Tchikobava was diagnosed with left chest wall pain, left pleural effusion, and paracervical tenderness. The compensation court found that Tchikobava weighed approximately 400 pounds at the time of the accident. Tchikobava testified he was discharged after a couple of hours.

Tchikobava was taken to a hotel. After falling asleep, Tchikobava later awoke and was in a lot of pain. An ambulance was called and drove Tchikobava back to the hospital. The emergency room records from August 10, 2010, show that Tchikobava complained of severe leg pain and rib pain, and it was noted that he was having some discomfort in his chest

and pain with breathing. Tchikobava was prescribed medication for the pain. A chest x ray showed a probable fracture of one of Tchikobava's ribs, and a CT scan of the chest showed "[n]o obvious displaced rib fracture . . . ."

Albatross Express paid for Tchikobava to fly to his home in New York. Tchikobava testified that it was a painful flight home. When Tchikobava arrived in New York on August 12, 2010, his wife took him to a hospital there. The admitting diagnosis was heart attack, and admission records also show complaints of backache and chest pain. Three views of the chest showed no evidence of acute left-sided rib fractures; however, this was in contrast to another medical record which noted there was a fracture of the seventh and eighth ribs on the left side. X rays taken of the lower back and hip revealed degenerative changes. A neurology consult was also performed on August 12. Pain management was ordered by the consulting doctor, and Tchikobava was admitted for a possible heart attack.

On August 18, 2010, Tchikobava was transferred to another New York hospital for a cardiac catheterization, which was negative. During the course of his stay at the hospital, Tchikobava complained of bilateral leg and back pain, left-sided chest pain, and vertigo. The medical reports noted that Tchikobava had intact alertness, orientation, attention, and memory.

While he was admitted to the second New York hospital, Tchikobava participated in physical therapy, but his ability to participate in the therapy was limited by his pain. Tchikobava was discharged on September 2, 2010, with a rolling walker, home care to be provided by social services, and medication, including oxycodone and antihypertensive agents.

On October 18, 2010, Tchikobava was examined by Dr. Pushp R. Bhansali, an orthopedic surgeon. Dr. Bhansali noted that Tchikobava had continued pain in his lower back and his left rib cage, but he could not assess Tchikobava's range of motion due to Tchikobava's obesity. Dr. Bhansali ordered "EMG/NCV" testing, physiotherapy, and medications.

Tchikobava was instructed to return in 6 weeks, but he did not do so.

On October 22, 2010, an MRI of Tchikobava's lumbar spine was performed, and the MRI confirmed that Tchikobava had a muscle spasm, mild degenerative disk disease, and a possible broad-based disk herniation at L5-S1. However, the herniation could not be confirmed due to Tchikobava's movement during the MRI.

At some point, Tchikobava began seeing Dr. Alexander Berenblit, a board-certified neurologist, for treatment, and he continued physical therapy with Dr. Berenblit's office through December 22, 2010. Dr. Berenblit ordered EMG/NCV testing, which occurred on December 8, and the test results were consistent with a bilateral L5-S1 radiculopathy. Dr. Berenblit recommended further physical therapy.

Tchikobava testified that Dr. Berenblit retired, so he began seeing Dr. Reyfman, a pain management specialist. Dr. Reyfman first examined Tchikobava on November 22, 2010, and at that visit, Tchikobava stated that he had low-back pain which radiated to both legs and that the pain was made worse by movement. Dr. Reyfman reviewed the MRI from October 22 and the EMG/NCV test results, and he diagnosed Tchikobava with lumbar disk displacement, lumbosacral neuritis radiculopathy, a sprain of the ribs, and a fracture of one rib. Dr. Reyfman recommended that Tchikobava continue with physical therapy and advised him to avoid certain movements, including bending, lifting, or carrying anything heavy.

With regard to causation, Dr. Reyfman stated in his report: "No pre-existing conditions exist that affects the causality. I feel that there is a direct causal relationship between the accident described and the patient's current injuries. The patient's symptoms and clinical findings are consistent with musculo-skeletal injuries to the described areas." Dr. Reyfman instructed Tchikobava to return in 2 to 3 weeks. The only other report from Dr. Reyfman contained in the record is from Tchikobava's office visit approximately 3½ years later, on April 30, 2014.

At the hearing, Tchikobava testified that he visited Dr. Reyfman more than twice, but only these two reports from Dr. Reyfman are in the record.

Tchikobava testified that he sought treatment with his family doctor, Dr. Iouri Sobol, from the period between January 2011 and April 2013, and he testified that Dr. Sobol prescribed him pain medication. The record does not contain any medical records or reports from Dr. Sobol. Furthermore, the record does not contain any medical reports or records regarding any treatment that Tchikobava received in 2011 or 2012.

The only medical report regarding Tchikobava's treatment in 2013 is an office note from Dr. Wayne A. Gordon, a neuropsychologist, who examined Tchikobava on August 16 and 19, 2013. Tchikobava's lawyer requested that Tchikobava be seen by Dr. Gordon. Dr. Gordon administered a series of tests regarding Tchikobava's memory and coordination. Dr. Gordon stated that based upon the results of these tests, he believed Tchikobava was suffering from cognitive deficits, and he determined that the cognitive deficits were "secondary to the accident."

The next evidence of Tchikobava's medical treatment in the record is Dr. Reyfman's report dated April 30, 2014. Dr. Reyfman stated in this report that Tchikobava complained of low-back pain radiating out to his legs, along with numbness and tingling in his feet and toes. He also complained of neck pain radiating to his shoulders, along with a headache. Dr. Reyfman ordered EMG/NCV testing on the arms and legs, which showed evidence of a bilateral cervical radiculopathy at C5-C6 and bilateral mild and chronic L4-5 and L5-S1 lumbosacral radiculopathy. He also ordered another MRI of the lumbar spine, which showed disk space collapse at L5-S1 leading to lateral recess stenosis.

In a report dated May 2, 2014, Dr. Reyfman stated that Tchikobava was at maximum medical improvement. He stated that Tchikobava suffered permanent impairment and could work only in the "less than sedentary" demand category.

Tchikobava was instructed to return in 1 week. The record does not contain other medical reports from Dr. Reyfman.

On May 28, 2014, Tchikobava visited Dr. Vadim Lerman and stated he had low-back pain and neck pain. Dr. Lerman reviewed the MRI from April 30, 2014, and he diagnosed Tchikobava with a lumbar radiculopathy, lumbar pain, spinal stenosis of the lumbar region, and a lumbar herniated disk. Dr. Lerman stated that he did not feel surgery was warranted, and he recommended that Tchikobava continue physical therapy, lose weight, and consider bariatric surgery.

At the hearing, Tchikobava testified that none of the treatment he received relieved him of his pain and that physical therapy made his pain worse. He testified that he cannot bathe himself, dress himself, or go to the bathroom or get out of his wheelchair without assistance. He further testified that he cannot drive and that his wife had given up her job as a nurse's aide in order to stay home and take care of him. Tchikobava also testified that he was informed that he cannot have surgery until he loses weight.

At the request of Albatross Express, Dr. Malcolm G. Coblentz, a general surgeon, examined Tchikobava on August 6, 2012. Dr. Coblentz reviewed several of Tchikobava's medical records, but he did not review the EMG/NCV testing from December 2010. Dr. Coblentz noted that his examination was limited by Tchikobava's obesity and lack of cooperation. Dr. Coblentz stated that he found no evidence of disability, based on his observations and limited physical examination. In a report dated June 12, 2014, Dr. Coblentz agreed with Dr. Reyfman that Tchikobava had reached maximum medical improvement on May 2, 2014.

On November 12, 2013, Tchikobava filed his petition in the workers' compensation court. In his petition, Tchikobava alleged that as a result of the August 9, 2010, accident, he suffered "broken ribs; head and neck injuries, including a traumatic brain injury . . . ; an exacerbated heart condition; a herniated disc at the L5-S1 level, resulting in bilateral radiculopathy;

and various other less serious injuries." Tchikobava sought temporary and permanent disability benefits, past and future medical expenses, and attorney fees and penalties for nonpayment of medical expenses and indemnity.

Albatross Express filed its answer on December 6, 2013. In its answer, Albatross Express generally denied the allegations set forth in Tchikobava's petition. Albatross Express further stated that Tchikobava's injuries and disabilities were "the result of the natural progression of preexisting conditions or arise out of independent intervening incidents entirely unrelated to" Tchikobava's employment with Albatross Express.

A hearing was held on February 24, 2015. At the hearing, Tchikobava offered exhibit 20, which was a deposition of Dr. Reyfman that was taken in connection with a separate negligence action that Tchikobava had brought against the employer of the driver who Tchikobava alleged was responsible for the accident. Albatross Express was a party in the negligence case, evidently for subrogation interests. With respect to Dr. Reyfman's deposition, Tchikobava had served notice of Dr. Reyfman's deposition upon the attorney representing Albatross Express in the negligence case. That attorney was in the same office as Albatross Express' attorney in the present workers' compensation case. The attorney for Albatross Express in the negligence case did not attend the deposition of Dr. Reyfman.

Tchikobava initially offered this deposition of Dr. Reyfman at the beginning of the hearing in this case, and Albatross Express objected to it on the bases of hearsay, foundation, and relevancy. The compensation court stated:

It's a close call here because Exhibit 20 [the deposition] is not signed, as I see it. If it were signed by the doctor, I think it could come in as a Rule 10 report.

Given that it's not signed, I have to consider it for what it is, a deposition taken in another case where [Albatross Express' attorney in the compensation case] was not given an opportunity to cross-examine him and may constitute

hearsay, although the Court is not governed by the rules of hearsay.

So it gets to be a little bit of a close call as to whether it's going to come in or not.

After some discussion, Tchikobava's attorney stated he would withdraw the offer of the deposition, "with the opportunity to offer it at the close of my evidence, if I think it's necessary after the cross-examination of . . . Tchikobava."

At the close of evidence, Tchikobava reoffered Dr. Reyfman's deposition. Albatross Express again objected, stating: "Objection, hearsay, pursuant to Rule 27 — Section 27-804 and particularly 27-804, subpart two, subpart A, as well as lack of evidence of unavailability. I think that covers it." In determining to sustain Albatross Express' objection, the compensation court stated:

So my concern is we have this deposition that [Albatross Express' attorney in the compensation case] did not attend in a case that is captioned in another court being offered as evidence against his client.

On the other hand, the hearsay rules don't necessarily apply to this court, but I have concerns of due process.

I'm going to sustain the objection as to — as to hearsay. And the reasoning is I just don't think that due process allows this out of court statement to be admitted to prove the truth of the matter asserted when [Albatross Express' attorney in the compensation case] did not have the opportunity to cross-examine Dr. Reyfman.

Accordingly, Dr. Reyfman's deposition was not received into evidence in this case.

Following the hearing, on April 1, 2015, the compensation court filed its award, in which it generally awarded Tchikobava temporary total disability benefits and permanent total disability benefits, and it denied future medical expenses, penalties, attorney fees, and interest. In its award, the workers' compensation court stated that it found Tchikobava "proved he suffered lumbar disc displacement (herniated disc), lumbosacral

neuritis radiculopathy and a sprain of the ribs." In making these findings, the court stated that it relied on Dr. Reyfman's report dated November 22, 2010. The court further stated that it "was not convinced" that Tchikobava had suffered a neck injury in the accident.

With respect to temporary total disability benefits, the court determined that Tchikobava was entitled to temporary total disability benefits from August 10, 2010, to and including December 8, 2010. The court stated that Dr. Reyfman imposed restrictions upon Tchikobava at the November 22, 2010, office visit and that those restrictions support Tchikobava's claim for temporary total disability benefits between August 10 and December 8 because Tchikobava's physical condition during that period was "virtually identical" to his physical condition when Dr. Reyfman examined him on November 22.

The court went on to state that it

cannot award [Tchikobava] any further [temporary total disability] benefits, because there is simply a lack of persuasive proof that [Tchikobava] was treating and recuperating from his injuries and disabled after December 8, 2010, which is the last medical record documenting medical treatment for his lower back until the office visit with Dr. Reyfman on April 30, 2014.

The court further stated that even though Tchikobava testified that he saw his family doctor, Dr. Sobol, during that period, the record does not contain any reports or records from Dr. Sobol regarding the treatment Tchikobava received, Tchikobava's pain or injuries that were being treated, or the success or failure of such treatment. The court further stated that "[w]hile Dr. Reyfman examined [Tchikobava] on April 30, 2014, he placed [Tchikobava] at maximum medical improvement only two days later. This single exam was not sufficient to convince the Court [Tchikobava] had been disabled for the three years prior." Accordingly, the court determined that Tchikobava "failed to prove he was entitled to any indemnity benefits from December 9, 2010 to and through May 1, 2014."

With respect to permanent disability benefits, the court found that Tchikobava "suffered a low back injury, which is an injury to the body as a whole." The court stated that Tchikobava offered evidence of permanent restrictions as imposed by Dr. Reyfman on April 30, 2014, and that this was sufficient to meet his burden of proof that he had been permanently impaired as a result of the accident on August 9, 2010.

The court then discussed the report completed by Karen Stricklett, the agreed-upon vocational counselor in this case. The court noted that in her report, Stricklett "provided two opposing opinions regarding [Tchikobava's] loss of earning capacity based upon the two differing medical opinions of Dr. Coblentz and Dr. Reyfman." Stricklett opined that if the court accepted Dr. Coblentz' opinion that Tchikobava suffered no impairment and no restrictions, then Tchikobava suffered a 0-percent loss of earning capacity. Conversely, if the court accepted Dr. Reyfman's opinions, then Tchikobava suffered a 100-percent loss of earning capacity.

In its award, the court stated that it was ultimately persuaded by Tchikobava's testimony and the medical opinion of Dr. Reyfman, and therefore, given Stricklett's report, the court found Tchikobava to be permanently and totally disabled. The court stated that Tchikobava was entitled to permanent total disability benefits starting on May 2, 2014, and continuing for so long as he remains permanently and totally disabled.

With respect to future medical care, the compensation court noted, citing *Foote v. O'Neill Packing*, 262 Neb. 467, 632 N.W.2d 313 (2001), that before an order for future medical care may be entered, there should be either a stipulation of the parties to that effect or evidence in the record sufficient to support a determination that future medical treatment will be reasonably necessary. The compensation court stated that because there was no stipulation between the parties regarding an award of future medical treatment, Tchikobava had the burden to prove that he was entitled to such an award.

The compensation court determined that Tchikobava "failed to meet his burden of proof for ongoing medical care for his rib and back injuries." The court stated that there was "little to no evidence from a medical doctor" that Tchikobava required ongoing medical care. The court noted that Tchikobava's last medical treatment was from Dr. Lerman on May 28, 2014, and that Dr. Lerman had stated that Tchikobava did not need surgery and should continue with physical therapy. However, the court declined to award physical therapy for Tchikobava, because the evidence showed that Tchikobava had not done physical therapy since 2010 and because Tchikobava testified that physical therapy only made his pain worse. The court stated that "[t]here was simply an absence of evidence proving [Tchikobava] would require or need additional medical care for his low back injury or his rib injury." Therefore, given the record, the court determined that Tchikobava was not entitled to any future medical care to be paid for by Albatross Express.

In sum, in its award filed April 1, 2015, the compensation court determined that Tchikobava was entitled to temporary total disability benefits from August 10, 2010, to and including December 8, 2010. The court determined that Tchikobava was entitled to permanent total disability benefits starting on May 2, 2014, and continuing for so long as Tchikobava remains permanently and totally disabled. The court stated that Albatross Express is entitled to a credit for indemnity benefits already paid to Tchikobava. The court also determined that Tchikobava was not entitled to future medical expenses to be paid for by Albatross Express and that Tchikobava was not entitled to an award of penalties, attorney fees, or interest.

Tchikobava appeals.

## ASSIGNMENTS OF ERROR

Tchikobava claims, restated, that the compensation court erred when it (1) sustained Albatross Express' objection to the receipt of Dr. Reyfman's deposition taken in a separate case,

(2) failed to award future medical expenses to Tchikobava, and (3) determined that Tchikobava was not entitled to temporary total disability indemnity benefits for the period of December 9, 2010, through May 1, 2014.

## STANDARDS OF REVIEW

[1,2] Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2014), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Hynes v. Good Samaritan Hosp.*, 291 Neb. 757, 869 N.W.2d 78 (2015). Determinations by a trial judge of the Workers' Compensation Court will not be disturbed on appeal unless they are contrary to law or depend on findings of fact which are clearly wrong in light of the evidence. *Id*.

[3] Admission of evidence is within the discretion of the Workers' Compensation Court, whose determination in this regard will not be reversed upon appeal absent an abuse of discretion. *Id*.

[4,5] Whether a plaintiff in a Nebraska workers' compensation case is totally disabled is a question of fact. *Kim v. Gen-X Clothing*, 287 Neb. 927, 845 N.W.2d 265 (2014). In testing the sufficiency of the evidence to support the findings of fact in a workers' compensation case, every controverted fact must be resolved in favor of the successful party and the successful party will have the benefit of every inference that is reasonably deducible from the evidence. *Id*.

## ANALYSIS

*Dr. Reyfman's Deposition.*

Tchikobava generally argues that the compensation court erred when, at the hearing in this matter, it did not receive

Tchikobava's offer of Dr. Reyfman's deposition, which had been taken in connection with a separate negligence action that Tchikobava brought against the employer of the driver who Tchikobava alleged was responsible for the accident. Tchikobava contends that Dr. Refyman's deposition was admissible pursuant to the Nebraska Workers' Compensation Court rules of procedure, specifically Workers' Comp. Ct. R. of Proc. 10 (2011), regarding evidence. Tchikobava further argues for admissibility under Neb. Rev. Stat. §27-804(2)(a) (Reissue 2008), which generally provides that a deposition is not excluded by the hearsay rule if the declarant is unavailable as a witness and if the deposition was taken in a different proceeding at the insistence of or against a party with an opportunity to develop the testimony with motive and interest similar to those of the party against whom it is now offered. Tchikobava argues that Dr. Reyfman's deposition is not excluded by the hearsay rule, because Dr. Reyfman was unavailable in this case and because Albatross Express had received notice of the deposition in the negligence action and therefore had the opportunity to cross-examine Dr. Reyfman.

In response, Albatross Express generally argues that the compensation court did not err when it refused to admit Dr. Reyfman's deposition, and that even if the refusal was incorrect, such error was not reversible error, because there was nothing new or significant contained in Dr. Reyfman's deposition that would have changed the compensation court's ruling. We determine that even if the compensation court erred when it refused to receive Dr. Reyfman's deposition, such error was not reversible error.

[6] Admission of evidence is within the discretion of the Workers' Compensation Court, whose determination in this regard will not be reversed upon appeal absent an abuse of discretion. *Hynes v. Good Samaritan Hosp.*, 291 Neb. 757, 869 N.W.2d 78 (2015). We have stated that as a general rule, the compensation court is not bound by the usual common-law or statutory rules of evidence, but its discretion to admit

evidence is subject to the limits on constitutional due process. See *Zwiener v. Becton Dickinson-East*, 285 Neb. 735, 829 N.W.2d 113 (2013).

With respect to the admission of evidence in workers' compensation cases, rule 10 of the Nebraska Workers' Compensation Court rules of procedure provides:

> The Nebraska Workers' Compensation Court is not bound by the usual common law or statutory rules of evidence; and accordingly, with respect to medical evidence on hearings before a judge of said court, written reports by a physician or surgeon duly signed by him, her or them . . . may, at the discretion of the court, be received in evidence in lieu of . . . the personal testimony of such physician or surgeon . . . . A sworn statement or deposition transcribed by a person authorized to take depositions is a signed, written report for purposes of this rule.
>
> A signed narrative report by a physician or surgeon . . . setting forth the history, diagnosis, findings and conclusions of the physician or surgeon . . . which is relevant to the case shall be considered evidence on which a reasonably prudent person is accustomed to rely in the conduct of serious affairs. The Nebraska Workers' Compensation Court recognizes that such narrative reports are used daily by the insurance industry, attorneys, physicians and surgeons and other practitioners, and by the court itself in decision making concerning injuries under the jurisdiction of the court.
>
> Any party against whom the report may be used shall have the right, at the party's own initial expense, of cross examination of the physician or surgeon . . . either by deposition or by arranging the appearance of the physician or surgeon . . . at the hearing.

Workers' Comp. Ct. R. of Proc. 10(A).

At the hearing before the compensation court, Tchikobava offered the deposition of Dr. Reyfman taken in the separate

negligence case. Pursuant to rule 10 and our case law, it was within the compensation court's discretion whether to receive Dr. Reyfman's deposition, subject to the limits on constitutional due process. For purposes of this case, we need not decide whether the compensation court abused its discretion when it denied admission of Dr. Reyfman's deposition, because even if the ruling was incorrect, any such error was not reversible error.

[7-9] In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party. *In re Estate of Clinger*, 292 Neb. 237, 872 N.W.2d 37 (2015). The exclusion of evidence is ordinarily not prejudicial where substantially similar evidence is admitted without objection. *Steinhausen v. HomeServices of Neb.*, 289 Neb. 927, 857 N.W.2d 816 (2015). Where evidence is cumulative to other evidence received by the court, its exclusion will not be considered prejudicial error. *Scott v. Khan*, 18 Neb. App. 600, 790 N.W.2d 9 (2010).

In the present case, although the compensation court denied Tchikobava's offer of Dr. Reyfman's deposition, it received Tchikobava's evidence of medical records from Dr. Reyfman. A comparison of Dr. Reyfman's medical records to his deposition shows that other than an explanation of his qualifications, there was nothing new or substantial in Dr. Reyfman's testimony in his deposition. In the deposition, Dr. Reyfman explained and defined certain medical procedures and terminology, and he testified to Tchikobava's injuries and restrictions, which information was also contained in the admitted medical records. Thus, evidence substantially similar to Dr. Reyfman's deposition was in evidence and the exclusion of the deposition was not prejudicial. See *Steinhausen v. HomeServices of Neb., supra*.

Tchikobava seems to argue that Dr. Reyfman's deposition would have been influential in connection with his claims that the compensation court erred when it did not award him temporary total disability benefits for the period from

December 2010 to May 2014 and when it did not award him future medical expenses. We reject this argument. Nothing in Dr. Reyfman's deposition testimony meaningfully relates to either of these two issues. In his deposition, Dr. Reyfman did not discuss whether Tchikobava was disabled for the time period Tchikobava asserts he should have been awarded temporary total disability benefits, and Dr. Reyfman did not testify regarding the need for future medical care and expenses.

Because Dr. Reyfman's deposition did not contain information that would have altered the compensation court's decision to reject temporary total disability benefits for the period from December 2010 to May 2014 and future medical expenses, the exclusion of Dr. Reyfman's deposition did not unfairly prejudice a substantial right of Tchikobava. Thus, even assuming that the compensation court erred when it did not admit Dr. Reyfman's deposition into evidence, we determine that any such error was not reversible error.

*Future Medical Expenses.*

Tchikobava claims that the compensation court erred when it did not award him future medical expenses. Tchikobava asserts that he presented evidence that his doctors recommended that Tchikobava undergo bariatric surgery to help facilitate weight loss. He also argued that Dr. Reyfman's records indicated that Tchikobava took pain medication for his injuries, and Tchikobava argues that "[i]t is clear that [Tchikobava] will require pain treatment for the remainder of his life." Brief for appellant at 21. We determine that the compensation court did not err when it did not award future medical expenses to Tchikobava.

[10,11] Before an order for future medical benefits may be entered, there should be a stipulation of the parties or evidence in the record to support a determination that future medical treatment will be reasonably necessary to relieve the injured worker from the effects of the work-related injury or occupational disease. *Sellers v. Reefer Systems*, 283 Neb. 760,

811 N.W.2d 293 (2012). An award of future medical expenses requires explicit evidence that future medical treatment is reasonably necessary to relieve the injured worker from the effects of the work-related injury. *Adams v. Cargill Meat Solutions*, 17 Neb. App. 708, 774 N.W.2d 761 (2009).

In the current case, there was no stipulation between the parties regarding an award of future medical treatment, and therefore, Tchikobava was required to present evidence showing he was entitled to an award of future medical expenses. In its award, the compensation court noted that "[t]here is little to no evidence from a medical doctor that [Tchikobava] requires ongoing medical care." The compensation court noted that Tchikobava's last medical treatment was from Dr. Lerman on May 28, 2014, and in his report, Dr. Lerman stated that Tchikobava did not need surgery and that he should continue with physical therapy. The compensation court declined to award physical therapy for Tchikobava, stating that Tchikobava had not done physical therapy since 2010 and that Tchikobava had testified that physical therapy only made his pain worse. Based on the lack of evidence demonstrating that Tchikobava would need additional medical care for his injuries, the compensation court determined that Tchikobava was not entitled to any future medical expenses.

Tchikobava asserts that Drs. Reyfman, Lerman, and Coblentz recommended that he undergo bariatric surgery in order to facilitate weight loss, and that accordingly, he should have been awarded future medical expenses with respect to such surgery. However, the record shows that although weight loss was recommended, none of the recommendations were attributed to Tchikobava's compensable injury.

Tchikobava also argues that Dr. Reyfman's records show Tchikobava has been prescribed pain medication and that "[i]t is clear that [Tchikobava] will require pain treatment for the remainder of his life." Brief for appellant at 21. We note that pain medication is mentioned in Dr. Reyfman's medical report dated April 30, 2014, and at trial, during his testimony,

Tchikobava mentioned that he was taking pain medication. However, there is no indication in the record that Tchikobava would need to continue taking the medication in the future.

In *Adams v. Cargill Meat Solutions, supra*, an employee, who had brought a workers' compensation action against her employer, presented evidence at trial that she was currently taking pain medication, but she did not present evidence that she would need to take such medication in the future. The Nebraska Court of Appeals determined that the employee had failed to present sufficient evidence to prove that future medical treatment would be reasonably necessary to relieve the effects of her work-related injury, and accordingly, it reversed the decision of the three-judge review panel that had affirmed the trial court's award of future medical expenses. In making its determination, the Court of Appeals stated:

The evidence does not support the trial court's determination that [the employee] required further medical treatment for her back injury. In awarding future medical expenses, the trial court relied on [the employee's] testimony that she was taking medication at the time of trial and notations in [the employee's] medical records indicating her history of taking prescription pain medication. Evidence that [the employee] currently takes pain medication or that she has a history of taking such medication is not enough to demonstrate that she requires future medical treatment to relieve the effects of her injury. As such, the trial court's finding that [the employee] "carried her burden of proof and persuasion" as to an award of future medical expenses is not supported by sufficient evidence.

The review panel affirmed the trial court's award of future medical expenses after concluding that the evidence presented at trial was sufficient to support an "inference" that [the employee] will continue to take pain medication after the time of trial. Such an inference is simply not supported by the evidence in the record. There

is no evidence that [the employee] intends to continue
to take her prescription pain medication. In fact, there is
no indication that [the employee] finds the medication to
be beneficial. She testified that even when she took the
medication, she was in constant pain and she could not
complete basic daily tasks. In addition, she testified that
her pain had increased, rather than decreased, since the
time of the accident.

Simply stated, an award of future medical expenses
requires explicit evidence that future medical treatment
is reasonably necessary to relieve the injured worker
from the effects of the work-related injury. Here, there
is no evidence that [the employee] requires any future
medical treatment or that future medical treatment would
be in any way beneficial in relieving the effects of her
back injury.

*Adams v. Cargill Meat Solutions*, 17 Neb. App. 708, 713-14,
774 N.W.2d 761, 765 (2009).

We apply the analysis in *Adams* to the present case. In this
case, the fact that Tchikobava was taking pain medication at
the time of trial and had taken pain medication in the past does
not constitute sufficient explicit evidence that he would need
to continue taking such medication in the future or that he
would need to be awarded future medical expenses.

Because Tchikobava failed to present sufficient evidence to
support a determination that future medical treatment would
be reasonably necessary to relieve him from the effects of his
work-related injury, we determine that the compensation court
did not err when it did not award future medical expenses
to Tchikobava.

*Temporary Total Disability Benefits.*

Tchikobava claims that the compensation court erred when
it did not award him temporary total disability benefits for the
period from December 9, 2010, through May 1, 2014. For the
reasons explained below, we reverse this ruling and remand the

cause to the compensation court on the existing record with directions to the compensation court to rule on this issue and to clarify its reasoning regarding its disposition of Tchikobava's claim for temporary total disability benefits for the period from December 9, 2010, through May 1, 2014.

[12,13] We have stated that temporary disability is the period during which the employee is submitting to treatment, is convalescing, is suffering from the injury, and is unable to work because of the accident. *Kim v. Gen-X Clothing*, 287 Neb. 927, 845 N.W.2d 265 (2014). Total disability exists when an injured employee is unable to earn wages in either the same or a similar kind of work he or she was trained or accustomed to perform or in any other kind of work which a person of the employee's mentality and attainments could perform. *Id*.

[14] Whether a plaintiff in a Nebraska workers' compensation case is totally disabled is a question of fact. *Id*. In testing the sufficiency of the evidence to support the findings of fact in a workers' compensation case, every controverted fact must be resolved in favor of the successful party and the successful party will have the benefit of every inference that is reasonably deducible from the evidence. *Zwiener v. Becton Dickinson-East*, 285 Neb. 735, 829 N.W.2d 113 (2013). Moreover, as the trier of fact, the Workers' Compensation Court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Hynes v. Good Samaritan Hosp.*, 291 Neb. 757, 869 N.W.2d 78 (2015).

[15-17] We have held that if the nature and effect of a claimant's injury are not plainly apparent, then the claimant must provide expert medical testimony showing a causal connection between the injury and the claimed disability. *Frauendorfer v. Lindsay Mfg. Co.*, 263 Neb. 237, 639 N.W.2d 125 (2002). Although an expert witness may be necessary to establish the cause of a claimed injury, the Workers' Compensation Court is not limited to expert testimony to determine the degree of disability but instead may rely on the testimony of the claimant. *Id*. We have further stated that although medical restrictions

or impairment ratings are relevant to a claimant's disability, the trial judge is not limited to expert testimony to determine the degree of disability but instead may rely on the testimony of the claimant. *Id.*

In its award, with respect to the period of December 9, 2010, to May 1, 2014, the compensation court stated:

> There is no evidence by way of medical records to prove [Tchikobava] was seeking medical treatment for his low back injury that was aiding to his recovery during the calendar years of 2011, 2012, 2013 or 2014. While [Tchikobava] testified he saw his family doctor, Dr. Sobol, the Court does not have one record from that doctor's office to document what treatment [Tchikobava] was receiving, the nature and extent of [Tchikobava's] pain or injuries for which he was treating or to document the success or failure of that treatment he received. Moreover, not one doctor limited [Tchikobava] or took [Tchikobava] off work in the calendar years of 2011, 2012, 2013 or 2014. While Dr. Reyfman examined [Tchikobava] on April 30, 2014, he placed [Tchikobava] at maximum medical improvement only two days later. This single exam was not sufficient to convince the Court [Tchikobava] had been disabled for the three years prior. The Court finds [Tchikobava] failed to prove he was entitled to any indemnity benefits from December 9, 2010 to and through May 1, 2014.

As noted by the compensation court, there are no medical records that were received into evidence regarding the period from December 9, 2010, until a report by Dr. Reyfman dated April 30, 2014. However, Tchikobava provided evidence regarding the status of his injury for the period of December 9, 2010, through May 1, 2014, by way of his testimony at the trial. At trial, Tchikobava testified that he regularly saw Dr. Sobol, who prescribed him medication, and he testified that because of his pain, it was difficult for him to move and he did not try to apply for employment.

It has been stated that a compensation court may refuse to follow uncontradicted evidence in the record,

> but when it does so, its reasons for rejecting the only evidence in the record should appear—e.g., that the testimony was inherently improbable, or so inconsistent as to be incredible, that the witness was interested, or that the witness' testimony on the point at issue was impeached by falsity in his statements on other matters. Unless some explanation is furnished for the disregard of all the uncontradicted testimony or other evidence in the record, the [compensation court] may find its award reversed as arbitrary and unsupported. This sometimes occurs when the [compensation court] denies compensation on a record that contains nothing but testimony favorable to the claimant, with no indication whether all or part of the testimony was disbelieved, and if so, why.

12 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 130.05[3] at 130-38.1 (2015). We agree with the commentary just quoted and apply it to this case.

As stated, Tchikobava's testimony is the only evidence contained in the record regarding the status of his injuries for the period from December 9, 2010, through May 1, 2014. There is no other evidence, such as medical records, that affirm or contradict the testimony Tchikobava gave at the hearing regarding this period. The compensation court's award fails to state what weight, if any, the court gave to Tchikobava's testimony. It is also unclear whether the compensation court denied temporary total disability benefits for the period from December 9, 2010, through May 1, 2014, because it found Tchikobava's testimony incredible or unreliable or because the court simply disregarded Tchikobava's testimony as evidence of the extent of his disability for that period and it had no medical records for the period at issue to assist it in making a ruling. Accordingly, we reverse the compensation court's ruling on this issue and remand this cause to the compensation court on the existing record with

directions to again rule on Tchikobava's claim for temporary total disability benefits for the period of December 9, 2010, through May 1, 2014, and to provide an explanation which forms the basis for its ruling.

## CONCLUSION

Assuming, without deciding, that it was error for the compensation court to refuse to admit Dr. Reyfman's deposition into evidence, such error was not reversible error. We determine that the compensation court did not err when it did not award future medical expenses to Tchikobava. These rulings are affirmed. With respect to the temporary total disability issue, we reverse the denial of benefits and we remand the cause to the compensation court on the existing record with directions to the court to again rule on Tchikobava's claim for temporary total disability benefits for the period from December 9, 2010, to May 1, 2014, and to provide an explanation which forms the basis for its ruling.

Affirmed in part, and in part reversed and remanded with directions.