Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/13/2018 09:12 AM CST

GERSON SAUL DEL CID ESCOBAR, APPELLEE AND
CROSS-APPELLANT, v. JBS USA, APPELLANT
AND CROSS-APPELLEE.

___ N.W.2d ___

Filed February 6, 2018.    No. A-17-227.

1. **Workers' Compensation: Appeal and Error.** Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2016), an appellate court may only modify, reverse, or set aside a Workers' Compensation Court decision when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.

2. ____: ____. Determinations by a trial judge of the Workers' Compensation Court will not be disturbed on appeal unless they are contrary to law or depend on findings of fact which are clearly wrong in light of the evidence.

3. ____: ____. Factual determinations by a workers' compensation trial judge have the effect of a jury verdict and will not be disturbed unless they are clearly wrong.

4. ____: ____. With respect to questions of law in workers' compensation cases, an appellate court is obligated to make its own determination.

5. **Workers' Compensation: Evidence: Proof.** When an employee in a workers' compensation case presents evidence of medical expenses resulting from injury, he or she has made out a prima facie case of fairness and reasonableness, causing the burden to shift to the employer to adduce evidence that the expenses are not fair and reasonable.

6. **Workers' Compensation: Expert Witnesses: Records.** Outside expert testimony is not required to establish a causal link between the work-related injury and a worker's hospitalization where the records establish a relationship to the work-related injury.

7. **Workers' Compensation.** Whether medical treatment is reasonable or necessary to treat a workers' compensation claimant's compensable injury is a question of fact.

8. **Workers' Compensation: Proof.** The burden rests on the employee to make out a prima facie case that the medical treatment the employee received is a result of a work-related injury.

9. \_\_\_\_: \_\_\_\_. Once a prima facie case is established, the burden shifts to the employer to rebut the employee's evidence.

10. **Workers' Compensation: Words and Phrases.** Temporary disability is the period during which the employee is submitting to treatment, is convalescing, is suffering from the injury, and is unable to work because of the accident.

11. **Workers' Compensation.** Total disability exists when an injured employee is unable to earn wages in either the same or a similar kind of work he or she was trained or accustomed to perform or in any other kind of work which a person of the employee's mentality and attainments could perform.

12. \_\_\_\_. Whether a plaintiff in a Nebraska workers' compensation case is totally disabled is a question of fact.

13. **Workers' Compensation: Evidence: Appeal and Error.** In testing the sufficiency of the evidence to support the findings of fact in a workers' compensation case, every controverted fact must be resolved in favor of the successful party and the successful party will have the benefit of every inference that is reasonably deducible from the evidence.

14. **Workers' Compensation.** As the trier of fact, the Workers' Compensation Court is the sole judge of the credibility of witnesses and the weight to be given their testimony.

15. **Workers' Compensation: Expert Witnesses.** If the nature and effect of a claimant's injury are not plainly apparent, then the claimant must provide expert medical testimony showing a causal connection between the injury and the claimed disability.

16. \_\_\_\_: \_\_\_\_. Although an expert witness may be necessary to establish the cause of a claimed injury, the Workers' Compensation Court is not limited to expert testimony to determine the degree of disability but instead may rely on the testimony of the claimant.

17. \_\_\_\_: \_\_\_\_. Although medical restrictions or impairment ratings are relevant to a claimant's disability, the trial judge is not limited to expert testimony to determine the degree of disability but instead may rely on the testimony of the claimant.

18. **Workers' Compensation.** Under Neb. Rev. Stat. § 48-121 (Reissue 2010), a workers' compensation claimant may receive permanent or

temporary workers' compensation benefits for either partial or total disability.

19. ____. Temporary disability benefits should be paid only to the time when it becomes apparent that the employee will get no better or no worse because of the injury.

20. ____. When an injured employee has reached maximum medical improvement, any remaining disability is, as a matter of law, permanent.

21. **Rules of the Supreme Court: Attorney Fees: Appeal and Error.** Neb. Ct. R. App. P. § 2-109(F) sets forth the procedure for a successful party to request attorney fees.

Appeal from the Workers' Compensation Court: Julie A. Martin, Judge. Affirmed in part, and in part reversed and remanded for further proceedings.

Dallas D. Jones and Thomas B. Shires, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellant.

Michael P. Dowd, of Dowd, Howard & Corrigan, L.L.C., for appellee.

Pirtle, Riedmann, and Arterburn, Judges.

Arterburn, Judge.

## I. INTRODUCTION

JBS USA (JBS) appeals and Gerson Saul Del Cid Escobar cross-appeals from an order entered by the Nebraska Workers' Compensation Court finding Escobar had sustained a work-related injury, finding that Escobar had reached maximum medical improvement, awarding a 15-percent loss of earning capacity, ordering JBS to pay for specific emergency room medical services, and awarding Escobar future medical care. On appeal, JBS argues the compensation court erred in finding that certain portions of medical bills incurred by Escobar during a period of hospitalization were related to his work injury and erred when it found that Escobar was entitled to temporary total disability from February 17 through March 15, 2016. On cross-appeal, Escobar argues the compensation court erred

by failing to award temporary partial benefits from June 28, 2015, through maximum medical improvement. Escobar also argues he is entitled to attorney fees. For the reasons set forth below, we affirm in part, and in part reverse and remand for further proceedings.

## II. BACKGROUND

The present appeal primarily concerns the nature and extent of the injury sustained by Escobar as a result of his accident. Escobar was 31 years old at the time of trial. Escobar had been employed by JBS for approximately 1½ years at the time of his accident. On June 25, 2015, Escobar sustained an injury to his lower back as a result of an accident arising out of and in the course of his employment with JBS. At the time of the accident, Escobar worked as a beef "tenderloin puller." His duties included removing tenderloins off of a conveyor belt and trimming the meat. These tenderloins could weigh up to 135 pounds. At some point during his shift on June 25, Escobar left the conveyor line to use the restroom. Escobar testified that upon his return to the line, his supervisor had pulled tenderloins from the line and placed them in a large bin. Escobar testified that he had to bend over the bin, lift the tenderloins, and place them onto his workstation. Escobar testified that he injured his back while lifting tenderloins out of the bin.

Escobar went to the company nurse that day to seek treatment for his back injury. The company nurse, Jana Elwood, noted in her report that Escobar did not appear to be in any physical distress. Elwood also noted that Escobar told her that he hated his job and wanted a new job, but did not want to have to bid for a new job. Elwood testified that she asked Escobar "if he was okay," and he responded that he was "mad," but was "okay."

Escobar did not seek further treatment from the company nurse until July 7, 2015. Escobar informed Elwood that he had dull pain in his lower back. Elwood did not note anything

remarkable about Escobar's condition in her report. Elwood treated Escobar with a "Biofreeze massage" and allowed him to return to work. Elwood applied the same treatment the following 2 days. Elwood then referred Escobar to a doctor for an examination on July 14.

Escobar was seen initially by Dr. Thomas Dunbar. Escobar stated that his pain was 10 out of 10, but Dr. Dunbar's report stated that the examination was normal except for some tenderness on Escobar's lower back. Dr. Dunbar prescribed some medication and released Escobar to work. Escobar returned to the physician's office 1 week later with no reported change to his pain level. The physician placed Escobar on work restriction and prescribed physical therapy.

During Escobar's first visit with the physical therapist, the therapist noted "[d]ecreased lumbar lordosis" and range of motion of the lumbar spine. At Escobar's last physical therapy session, which was August 24, 2015, Escobar stated that the pain had decreased some and the therapist noted improvement. However, Escobar still complained of pain, so the physical therapist referred Escobar to a physiatrist.

On August 27, 2015, Escobar sought treatment at the University of Nebraska Medical Center (UNMC) for a reported 2-month history of constant left-sided low-back pain after lifting at work. After examination, Escobar was diagnosed with a "[l]arge flank ecchymosis" of the left lumbar back and tenderness of the lower back, but normal range of motion. Escobar was prescribed medication and told to visit his regular physician.

On August 31, 2015, Escobar underwent an examination by Dr. Christopher Anderson, a physiatrist. Escobar complained of "10/10" left-sided lumbar pain. Dr. Anderson diagnosed Escobar with "[l]eft [l]umbar [r]adiculitis" resulting from his work-related injury. Dr. Anderson ordered additional medications, an MRI, and no work for 1 week. Escobar learned on September 1 that JBS would not pay him benefits for his week off of work, so Escobar requested that Dr. Anderson lift the

work restriction. Dr. Anderson subsequently released Escobar to work but restricted him to light-duty work.

Escobar had an MRI conducted on September 3, 2015. The MRI showed mild degenerative changes of the lumbar spine and an "L4-5 annular tear with disc bulge." At the following visit, Dr. Anderson noted that Escobar's manual muscle strength was normal and that he had better range of motion. However, Escobar still complained of severe pain, and he scored at the maximum score on the pain disability questionnaire. Escobar continued his medications and light-duty work and was subsequently referred for more physical therapy.

Escobar continued to treat with his physical therapist and Dr. Anderson until January 2016. On January 6, by request of JBS, Escobar was evaluated by Dr. Dennis Bozarth, an orthopedic surgeon. Dr. Bozarth determined that Escobar's subjective back pain was out of proportion to the physical examination, which was likely exacerbated by biopsychosocial stressors. Escobar continued his treatment with Dr. Anderson, and on February 17, Dr. Anderson took Escobar off of work for 4 weeks and referred him for more physical therapy.

On February 23, 2016, Escobar sought treatment at the UNMC emergency room. Escobar complained of sharp low-back pain radiating down his left leg to his foot. At trial, Escobar testified that he went to the emergency room because "half of my body got numb." Escobar was admitted to the hospital and underwent a battery of tests. Escobar remained in the hospital for 2 days. We will discuss the numerous procedures Escobar underwent as they become relevant in our analysis.

On March 2, 2016, Dr. Bozarth authored a letter in response to JBS' request for an opinion regarding Escobar's ability to perform his job. Dr. Bozarth opined that he disagreed with Dr. Anderson's assessment and believed that Escobar could perform light to medium work. Dr. Bozarth stated that he believed Escobar should undergo a functional capacity evaluation (FCE) in order to determine exactly what restrictions

and work capacity Escobar could handle. Dr. Bozarth stated in his letter that he believed Escobar had reached maximum medical improvement.

After being provided with Dr. Bozarth's letter, Dr. Anderson agreed that an FCE would be appropriate. Dr. Anderson did not agree with Dr. Bozarth's work restrictions, but believed Escobar could return to work with light-duty restrictions. Escobar underwent an FCE on April 4, 2016. No restrictions could be prescribed because the therapist determined that Escobar performed with "submaximal effort." Dr. Anderson was unable to utilize the FCE for permanent work restrictions but did place Escobar at maximum medical improvement on April 21. Escobar underwent a second FCE on September 26. The results were found to be valid by the therapist and indicated that Escobar could work medium to heavy physical demand for an 8-hour day.

Escobar sought treatment with Dr. John McClellan on September 26, 2016. Dr. McClellan evaluated Escobar at a spine and pain center. Dr. McClellan specifically opined that the aggravation of Escobar's preexisting lumbar degeneration arose when Escobar was lifting heavy tenderloins from the bin at work on June 25, 2015.

Escobar filed a petition in the compensation court on January 7, 2016. The matter went to trial on November 21. The compensation court received stipulations of fact, heard testimony, and received documentary evidence. There being no dispute, the compensation court found that Escobar had presented sufficient evidence to support his claim of a work-related low-back injury. The compensation court found that Escobar had reached maximum medical improvement on April 21, the date Dr. Anderson noted in his report. The compensation court awarded temporary total disability benefits from February 17 to March 15. The compensation court also awarded Escobar a 15-percent loss of earning capacity. Additionally, the compensation court ordered JBS to pay certain costs associated with Escobar's medical treatment

from February 23 through 25. Finally, the compensation court awarded future medical care.

## III. ASSIGNMENTS OF ERROR

JBS argues the compensation court erred in (1) finding that certain hospital bills incurred by Escobar were related to his work injury and (2) finding that Escobar was entitled to temporary total disability from February 17 through March 15, 2016. On cross-appeal, Escobar argues the compensation court erred by failing to award temporary total and temporary partial disability from June 28, 2015, through maximum medical improvement on April 21, 2016. Escobar also argues that he is entitled to attorney fees.

## IV. STANDARD OF REVIEW

[1] Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2016), an appellate court may only modify, reverse, or set aside a Workers' Compensation Court decision when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Tchikobava v. Albatross Express*, 293 Neb. 223, 876 N.W.2d 610 (2016).

[2-4] Determinations by a trial judge of the Workers' Compensation Court will not be disturbed on appeal unless they are contrary to law or depend on findings of fact which are clearly wrong in light of the evidence. *Id.* Factual determinations by a workers' compensation trial judge have the effect of a jury verdict and will not be disturbed unless they are clearly wrong. *Gardner v. International Paper Destr. & Recycl.*, 291 Neb. 415, 865 N.W.2d 371 (2015). In testing the sufficiency of the evidence to support the findings of fact by the workers' compensation court, every controverted fact must be considered in the light most favorable to the

successful party and that party must be given the benefit of every inference reasonably deducible from the evidence. *Id.* With respect to questions of law in workers' compensation cases, an appellate court is obligated to make its own determination. *Lovelace v. City of Lincoln*, 283 Neb. 12, 809 N.W.2d 505 (2012).

## V. ANALYSIS

### 1. JBS' Appeal

#### (a) Hospital Treatment

JBS argues the district court erred in ordering it to pay $16,840.18 for charges relating to Escobar's hospitalization from February 23 through 25, 2016. JBS argues that Escobar did not meet his burden to prove that these costs were a result of his work-related low-back injury. JBS further contends that the compensation court erred when it ordered JBS to pay for treatment incurred by Escobar for which the compensation court could not determine whether it was attributable to the work-related low-back injury or another ailment.

[5] Neb. Rev. Stat. § 48-120 (Cum. Supp. 2014) provides in pertinent part, "The employer is liable for all reasonable medical, surgical, and hospital services . . . which are required by the nature of the injury and which will relieve pain or promote and hasten the employee's restoration to health and employment . . . ." "When an employee in a workers' compensation case presents evidence of medical expenses resulting from injury, he or she has made out a prima facie case of fairness and reasonableness, causing the burden to shift to the employer to adduce evidence that the expenses are not fair and reasonable." *Dawes v. Wittrock Sandblasting & Painting*, 266 Neb. 526, 547, 667 N.W.2d 167, 187 (2003), *overruled on other grounds, Kimminau v. Uribe Refuse Serv.*, 270 Neb. 682, 707 N.W.2d 229 (2005).

The compensation court stated in its order:

Therefore, based upon the totality of the evidence, [Escobar's] testimony as to the need for treatment, the

documented reports of continued complaints of pain, and the opinions of the experts that support a work-related injury to his low back, the Court finds that [JBS] is responsible for those emergency room charges related to treatment for his low back. . . .

That being said, the Court appreciates [JBS'] arguments as to the relatedness of some of the charges as some of the incurred expenses were for tachycardia and unrelated infections. However, no evidence was offered as to which charges were not related to the low back so the Court was left to try and sort out any unrelated expenses. Any treatments or medications that the Court was not familiar with, could not find documentation in the medical records to explain the charge, or were for treatment for the combined diagnoses, the Court has assessed those charges against [JBS]. The Court has determined that [JBS] shall pay the following expenses incurred at UNMC from February 23, 2016, through February 25, 2016 . . . .

The compensation court went on to list numerous medications, procedures, and tests performed at UNMC during Escobar's hospitalization which met its stated criteria. However, the court did not delineate which of these charges it found to be related to Escobar's injury and which charges lacked documentation in the record or were otherwise unfamiliar. We note that two itemized statements of services provided and the associated charges with them are present in the record. One statement contains a total of $28,033.75 in charges. The other statement lists charges totaling $2,745.70. It is apparent, therefore, that the compensation court found almost half of the total charges to be unrelated to Escobar's back injury.

JBS argues that without expert testimony tying his hospitalization and the various charges incurred to the work-related injury, Escobar could not prove that any of the UNMC charges were payable by it. JBS further argues that the

compensation court's requirement that JBS pay these charges for which it was not familiar or could not find explanatory documentation constituted a shift in the burden of proof from the employee to the employer.

[6,7] We first note that outside expert testimony is not required to establish a causal link between the work-related injury and Escobar's hospitalization where the records establish a relationship to the work-related injury. See *Lounnaphanh v. Monfort, Inc.*, 7 Neb. App. 452, 583 N.W.2d 783 (1998). "Whether medical treatment is reasonable or necessary to treat a workers' compensation claimant's compensable injury is a question of fact." *Yost v. Davita, Inc.*, 23 Neb. App. 482, 489, 873 N.W.2d 435, 443 (2015), *modified on denial of rehearing* 23 Neb. App. 732, 877 N.W.2d 271 (2016).

As to the link between the specific charges incurred by Escobar while hospitalized, we find guidance for this issue in *Visoso v. Cargill Meat Solutions*, 18 Neb. App. 202, 778 N.W.2d 504 (2009). In *Visoso*, we considered whether a series of doctor's visits by an employee were related to the workplace injury and thus payable by the employer. The clinic reports recounted various medical conditions assessed during the visits. However, in each case, the claim reports noted that the employee's neck pain was assessed, and in some instances, treated. The billings in *Visoso* were for general office visits. There were not specific charges for treatment of the various complained of ailments.

We held that the medical records "clearly made out a prima facie case of fairness, reasonableness, and necessity because each visit included evaluation, treatment, or followup from his work injury. Therefore, the burden shifted to [the employer] to adduce evidence that the expenses are not fair and reasonable." *Id.* at 212, 778 N.W.2d at 513. While we did require evidence from the medical records to establish a causal connection between the work-related injury and the doctor visits, we did not require the employee to produce independent medical testimony to establish that connection.

[8,9] Here, there is no issue regarding whether the expenses are fair and reasonable; however, we see no reason not to apply the same burden of proof analysis to the issue of whether the medical treatment that was incurred was a result of the work-related injury. Therefore, the burden does rest on the employee to make out a prima facie case that the medical treatment the employee received is a result of a work-related injury. Once a prima facie case is established, the burden shifts to the employer to rebut the employee's evidence.

Here, the compensation court clearly excluded charges found not to be related to the work-related injury. The court included charges found to be related to that injury. The compensation court erred, however, by requiring JBS to pay for the medical services rendered which were unfamiliar and undocumented. Because the compensation court grouped these charges together with the charges found to be related to the workplace injury, we must remand the issue to the compensation court for further consideration. The court shall list separately those charges it found to be related to the workplace injury. JBS shall be required to pay only those related charges. JBS shall not be required to pay those charges which were unfamiliar or undocumented. Therefore, we must reverse the award of $16,840.18 by the compensation court to Escobar, and remand the issue for further consideration.

### (b) Award of Temporary Total
### Disability Benefits

JBS argues the compensation court erred in finding that Escobar was entitled to temporary total disability benefits from February 17 through March 15, 2016. JBS argues that there was no evidence that Escobar was submitting to treatment or that he was convalescing, suffering, and unable to work. Additionally, JBS argues that the hospitalization that occurred during this period was mainly due to other ailments, not the work-related low-back injury.

[10,11] Temporary disability is the period during which the employee is submitting to treatment, is convalescing, is suffering from the injury, and is unable to work because of the accident. *Kim v. Gen-X Clothing*, 287 Neb. 927, 845 N.W.2d 265 (2014). Total disability exists when an injured employee is unable to earn wages in either the same or a similar kind of work he or she was trained or accustomed to perform or in any other kind of work which a person of the employee's mentality and attainments could perform. *Id.*

[12-14] Whether a plaintiff in a Nebraska workers' compensation case is totally disabled is a question of fact. *Id.* In testing the sufficiency of the evidence to support the findings of fact in a workers' compensation case, every controverted fact must be resolved in favor of the successful party and the successful party will have the benefit of every inference that is reasonably deducible from the evidence. *Zwiener v. Becton Dickinson-East*, 285 Neb. 735, 829 N.W.2d 113 (2013). Moreover, as the trier of fact, the Workers' Compensation Court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Hynes v. Good Samaritan Hosp.*, 291 Neb. 757, 869 N.W.2d 78 (2015).

[15-17] If the nature and effect of a claimant's injury are not plainly apparent, then the claimant must provide expert medical testimony showing a causal connection between the injury and the claimed disability. *Frauendorfer v. Lindsay Mfg. Co.*, 263 Neb. 237, 639 N.W.2d 125 (2002). Although an expert witness may be necessary to establish the cause of a claimed injury, the Workers' Compensation Court is not limited to expert testimony to determine the degree of disability but instead may rely on the testimony of the claimant. *Id.* Although medical restrictions or impairment ratings are relevant to a claimant's disability, the trial judge is not limited to expert testimony to determine the degree of disability but instead may rely on the testimony of the claimant. *Id.*

The compensation court received into evidence reports from Drs. Anderson and Bozarth. Dr. Bozarth opined in his

report that Escobar did not need to be off work, but should have some restrictions. Dr. Anderson directed that Escobar not work during the timeframe for which temporary total disability benefits were awarded. On March 24, 2016, Dr. Anderson released Escobar to work with some restrictions. The compensation court stated in its order that it gave more weight to Dr. Anderson, because he was Escobar's treating physician. Viewing every controverted fact in favor of Escobar and giving the benefit of every inference that is reasonably deducible from the evidence to Escobar, we cannot say that the compensation court was clearly wrong in its decision to award Escobar temporary total disability benefits. Therefore, we affirm the decision of the compensation court in this respect.

### 2. Escobar's Cross-Appeal

Escobar argues the compensation court erred in not awarding him temporary disability benefits from June 28, 2015, through April 21, 2016, the date the compensation court determined Escobar had reached maximum medical improvement. Escobar argues that in order to perform a light-duty job, he had to change positions from tenderloin puller to cleanup. Escobar argues that he should have been awarded temporary partial disability benefits as a result of having to switch positions due to his work-related injury.

[18-20] Under Neb. Rev. Stat. § 48-121 (Reissue 2010), a workers' compensation claimant may receive permanent or temporary workers' compensation benefits for either partial or total disability. "Temporary" and "permanent" refer to the duration of disability, while "total" and "partial" refer to the degree or extent of the diminished employability or loss of earning capacity. *Gardner v. International Paper Destr. & Recycl.*, 291 Neb. 415, 865 N.W.2d 371 (2015). Compensation for temporary disability ceases as soon as the extent of the claimant's permanent disability is ascertained. *Id.* In other words, temporary disability benefits should be paid only to

the time when it becomes apparent that the employee will get no better or no worse because of the injury. *Visoso v. Cargill Meat Solutions*, 285 Neb. 272, 826 N.W.2d 845 (2013). Simply stated, when an injured employee has reached maximum medical improvement, any remaining disability is, as a matter of law, permanent. *Gardner, supra*.

The compensation court determined that Escobar had bid on two lighter duty jobs 2 weeks before the date of his work-related injury. The compensation court noted that these jobs were lower-paying jobs than the tenderloin puller job Escobar was working. The compensation court determined that even though Escobar worked a lower-paying job after the work-related injury, it was voluntary. We find that the compensation court was not clearly wrong in this respect and affirm its finding.

### 3. Escobar's Request for Attorney Fees

[21] Finally, we note in Escobar's initial brief that he requests attorney fees for having to defend an appeal of the compensation court's award in his favor. However, Neb. Ct. R. App. P. § 2-109(F) (rev. 2014) sets forth the procedure for a successful party to request attorney fees. Escobar's request contained in his brief is not in compliance with that procedure, and although this court has not ordered a reduction of the amount awarded to him, we are remanding the cause to the compensation court for further proceedings involving the amount it ordered JBS to pay. See Neb. Rev. Stat. § 48-125 (Cum. Supp. 2014). Therefore, we do not address this request at this time.

### VI. CONCLUSION

We find that the compensation court erred in finding that the entirety of $16,840.18 in hospitalization charges should be taxed against JBS. We reverse that portion of the court's award and remand it for further consideration of whether

Escobar met his prima facie burden to prove whether the charges were related to his injury. We find that the compensation court did not err in finding that Escobar was entitled to temporary total disability benefits from February 17 through March 15, 2016. We find the compensation court did not err by failing to award Escobar temporary partial disability benefits from June 28, 2015, through maximum medical improvement. Finally, we find that Escobar is not entitled to attorney fees.

Affirmed in part, and in part reversed and remanded for further proceedings.